UNITED STATES, Appellee,

v.

Marc R. BOLADO, 221–64–5448 Lance Corporal (E–3), U.S. Marine Corps, Appellant.

NMCM No. 91–2682–M.

U.S. Navy–Marine Corps Court of Military Review.

Dec. 19, 1991.

---

Capt Dwight H. Sullivan, USMC, Appellate Defense Counsel.

LT David P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

LAWRENCE, Judge:

This case comes to us by Government appeal filed pursuant to Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862. At trial, the military judge dismissed certain charges and specifications based on a denial of appellant's speedy trial rights contained in Rule for Courts–Martial (R.C.M.) 707, Manual for Courts–Martial (MCM), United States, 1984.

## TIMELINESS OF APPEAL

▪ Article 62, UCMJ, requires that Government appeals from trial court rulings be "diligently prosecuted" and that an appeal "shall be forwarded by a means prescribed under regulations of the President directly to the Court of Military Review." R.C.M. 908(b)(6) states that "trial counsel shall promptly and by expeditious means forward the appeal to a representative of the Government designated by the Judge Advocate General." Rule 21(d)(1), Courts of Military Review Rules of Practice and Procedure [hereinafter Court Rules] provides in pertinent part:

The trial counsel shall have 20 days from the date written notice to appeal is filed with the trial court to forward the appeal, including an original and three copies of the record of trial, to the representative of the Government designated by The Judge Advocate General. The person designated by The Judge Advocate General shall promptly file the original record with the Clerk of the Court of Military Review and forward one copy to opposing counsel.

The first issue in resolving this appeal is whether mailing the appeal and record of trial within 20 days from the date of written notice of appeal to the trial court meets the requirements of the cited authorities.

We find that it does. R.C.M. 908(b)(6) and Court Rule 21(d)(1) are promulgated pursuant to express statutory authority in Articles 36, 62, and 66, UCMJ, 10 U.S.C. §§ 836, 862, and 866; consequently, if possible they will be interpreted to avoid any conflict in their terms. The President in R.C.M. 908 chose to promulgate a general rule that trial counsel will forward government appeals promptly and by expeditious means. Article 66(f), UCMJ, requires the Judge Advocates General to "prescribe uniform rules of procedure for Courts of Military Review." Clearly, Congress intended to grant to those officers discretion to exercise their independent judgment in fashioning those rules so long as the resulting rules do not conflict with the Code or any provision properly promulgated pursuant to Codal authority. The Judge Advocates General chose a simple, definite rule that can be followed readily in every case and elected not to distinguish between cases being tried overseas and those tried in the United States. We conclude that they acted within their statutory grant of authority in promulgating the Court Rule and that the Court Rule does not conflict with the Rule for Courts–Martial. Thus, except in the most extraordinary case [1] compliance with the Court Rule constitutes compliance with the Rule for Courts–Martial.

The Court Rule only requires that the appeal be forwarded within the 20–day period, not received or filed. The word "forward" means "[t]o send forward; to send

---

1. We do not decide whether the *means* of forwarding the appeal may be so patently unreasonable and unexpeditious under the circumstances as to amount to a violation of Article 62 and R.C.M. 908 since the facts of this case do not present the issue.

toward the place of destination; to transmit." *Black's Law Dictionary* 590 (5th ed. 1979). Furthermore, a strict requirement that an appeal be received by the Government representative within 20 days of notice of appeal would be an unduly onerous burden on the Government in light of the world-wide locations of courts-martial. Court Rule 21(d)(1) requires that the appeal be forwarded along with the original and two copies of the record of trial. That record must be typed and edited prior to forwarding. An expedited preparation reasonably may take several days even if only a portion of the trial proceedings are transcribed. To require receipt by the Government representative within 20 days would in essence require hand-carry by a courier from overseas locations since virtually any other means would risk a delay sufficient to result in a late receipt and, according to appellee, a dismissal of the appeal. We will not impose a requirement the Judge Advocates General declined to include in the exercise of their statutory authority under Article 66.

Appellee cites two decisions that allegedly support his interpretation of Court Rule 21(d)(1). We conclude that neither does. In *United States v. Snyder*, 30 M.J. 662 (A.F.C.M.R.1990), the Court issued an order to the Government to show cause why its appeal should not be denied for a " 'failure to promptly *file the Record of Trial with the Clerk of this Court* as required by Rule 21.' " *Id.* at 664 (emphasis added). The Court found that the Government had not met its burden of showing that the filing was prompt since 30 days elapsed from the date of notice of appeal to the filing of the record of trial with the clerk of court. Because the Government failed to indicate when the record of trial was received by the Government representative, there existed the possibility that numerous days had passed between receipt by the representative and filing with the clerk of court. Appellee also cites our unpublished decision of *United States v. Odom*, No. 88–2562 M (N.M.C.M.R. Aug. 8, 1988). Because the decision is unpublished, it is not legal precedent that binds this Court. In *Odom*,

the appeal and the original record of trial were not forwarded within 20 days after notice of appeal, and they sat for several days in the administrative section of the appellate review activity prior to being obtained by the Government representative and being filed with the clerk of court. We agree that persuasive grounds existed for denying the appeal on the basis of untimeliness, however, we must conclude that dicta in the decision suggests a misreading of the Court Rule by the Court. We disavow any suggestion in *Odom* that the appeal and record of trial must be *received* by the Government representative within 20 days of notice of appeal.

We conclude that the Government appeal was forwarded and filed in accordance with Court Rule 21(d)(1) and is therefore timely.

## MERITS OF THE APPEAL

■ Turning now to the merits of the appeal, we begin by acknowledging that we may "act only with respect to matters of law," Article 62(b), UCMJ, 10 U.S.C. § 862(b), and we are bound by the military judge's determination of fact unless it is " 'unsupported by the evidence of record or was clearly erroneous.' " *United States v. Burris*, 21 M.J. 140, 143–44 (C.M.A.1985), citing *United States v. Middleton*, 10 M.J. 123, 133 (C.M.A.1981). We conclude that the military judge erred as a matter of law and grant the Government appeal.

The offenses alleged in this case involve attempted distribution and wrongful use of Lysergic Acid Diethylamide (LSD) allegedly occurring during November 1989 to February 1990. The appellee was a member of a helicopter squadron at the time of the alleged offenses and remained a member of that squadron until 28 August 1990 when the unit deployed to Southwest Asia as part of Operation Desert Shield. On that date, he was reassigned to another helicopter squadron that did not deploy. The appellee was a metalsmith who had worked directly on squadron aircraft, but after his transfer he was assigned to the toolroom because of a squadron policy that no one involved in a drug incident was permitted to work directly on squadron air-

craft. No other form of restraint or loss of liberties was placed upon him. It was stipulated by the parties that appellee's test scores throughout this period made him ineligible for advancement to corporal.

In September 1990, the squadron commander decided to order the investigation of the charges pursuant to Article 32, UCMJ, and charges were preferred. Shortly after the appointment of an investigating officer in mid-October 1990, the squadron legal officer learned that two military members who were Naval Investigative Service (NIS) witnesses had been deployed to Southwest Asia as part of Operation Desert Shield with no known date of return. The legal officer thereafter informed the squadron commander that the case could not be prosecuted successfully without the two witnesses and that failure to dismiss or try the case within 120 days from the date of preferral of charges would result in a dismissal based on a denial of speedy trial. In response to this advice, on 30 October 1990, the squadron commander ordered the trial counsel to line out the original charges. Trial counsel did so and dated each interlineation. On 2 November 1990, the commander executed a document entitled "Dismissal of Charges" in which it states that the charges forwarded for investigation were thereby dismissed. The appellee was informed verbally of the dismissal but that the charges would be reinstituted at some time in the future. Thereafter, appellee was not confined or restricted nor was he placed on legal hold, and he requested and was granted annual leave over the 1990 Christmas holidays.

In March and April 1991, the NIS witnesses returned from Operation Desert Shield/Storm. In June, the squadron commander initiated action to reinstitute Article 32 investigation proceedings, and charges were preferred again in late June. Appellee was again granted annual leave. An investigating officer was appointed in mid-July, and an additional charge was preferred to be investigated with the original

charges. Finally, in mid-August, the charges were referred for trial by special court-martial. At that trial on 24 September 1991, at which appellee was arraigned,[2] the military judge dismissed the original charges with prejudice based on his finding of a denial of appellee's right to speedy trial of those charges.

The military judge entered essential findings of fact and conclusions of law. In pertinent part he found that the Government had undertaken "no efforts to depose the witnesses overseas or to arrange for their presence at the investigation." He found that although the squadron commander "styled his memorandum as a dismissal of charges, it is apparent that his intent was merely to withdraw the charges from the investigation until such time as the government witnesses returned to the situs of the investigation and were available to testify." He noted that the unavailability of the witnesses had not been established on the record and that the purported dismissal apparently had been directed "as a matter of convenience to the government." Lastly, he emphasized the lack of evidence establishing the two witnesses' unavailability, the impracticability of ordering them to return to testify, or the impracticability of taking their depositions for use in the investigation. He concluded by stating:

> ... While the affected charges and specifications are comparatively serious, the impact of reprosecution of the accused on these charges appears counter-productive to the goal of prompt administration of military justice. Additionally, while the accused has not been incarcerated or otherwise restrained during the intervening period of delay, he has been sidelined from his MOS as a metalsmith for approximately a year's time and left in a backwater of suspicion. Balancing these considerations as a whole against the background of the government's obligation to ensure the accused receives a

---

**2.** Because arraignment was completed after 6 July 1991, the changes to R.C.M. 707 contained in Exec.Order No. 12767, 56 Fed.Reg. 30, 284 (1991), were in effect at the time of the military judge's ruling in this case.

speedy trial, the weight of the factors tips in favor of the accused.

Based on these reasons, the original charges were dismissed with prejudice. After hearing these findings and the ruling, trial counsel made an offer of proof of testimony that would establish that had any request for these two witnesses been made it would have been properly denied based on their unavailability. He proffered that during Operation Desert Shield/Storm they were both military policemen serving in a unit that was severely undermanned and overworked already. The military judge indicated that that evidence would not change his ruling and declined to hear it.

This case does not involve the right to speedy trial contained in the Sixth Amendment to the United States Constitution, nor does it pertain to the principles set forth in *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), and its progeny since at no time was appellee confined or otherwise restrained in his liberty prior to trial.[3] For these reasons, appellee's speedy trial rights are encompassed in R.C.M. 707. R.C.M. 707(b)(3)(A) provides that "[i]f charges are dismissed ... a new 120–day time period under this rule shall begin on the earlier of (i) the date of repreferral; (ii) the date of imposition of restraint under R.C.M. 304(a)(2)–(4)." As noted previously, at no time during the pretrial proceedings in this case was appellee subjected to pretrial restraint under R.C.M. 304(a)(2)–(4). Accordingly, it is clear that if the squadron commander dismissed the charges as he indicated he did, the 120–day speedy trial clock began anew on the date of re-preferral.

■ Dismissal occurs when action is taken by a commander that terminates the charges. Charges may be dismissed prior to or after referral to a court-martial. R.C.M. 306(c)(1), 401(c). After dismissal, the accused "no longer faces charges" and returns "to full-time duty with full rights as accorded to all other servicemembers." *United States v. Britton,* 26 M.J. 24, 26

(C.M.A.1988). After dismissal, "[r]einstitution of charges requires the command to start over. The charges must be re-preferred, investigated, and referred in accordance with the Rules for Courts–Martial, as though there were no previous charges or proceedings." *Id.* R.C.M. 401(c)(1), Discussion, indicates that "[c]harges are ordinarily dismissed by lining out and initialing the deleted specifications or otherwise recording that a specification is dismissed. When all charges and specifications are dismissed, the accuser and the accused ordinarily should be informed." The Discussion to the Rule further states that "[a] charge should be dismissed when it ... is unsupported by available evidence, or when there are other sound reasons why trial by court-martial is not appropriate." If a charge is dismissed, the statute of limitations is no longer tolled on it. *United States v. Mucthison,* 28 M.J. 1113, 1115 n. 3 (N.M.C.M.R.1989).

■ Withdrawal of charges merely takes them out of the court-martial proceedings to which they were referred. The charges are nonetheless viable and may be re-referred without re-preferral and re-investigation. The trial counsel may line out withdrawn charges or specifications and renumber the remaining charges or specifications, initialling the changes. R.C.M. 604(a), Discussion. Withdrawn charges may be re-referred to another court-martial only for a proper reason. R.C.M. 604(b). Significantly, the Discussion to R.C.M. 604(a) states that "[c]harges which are withdrawn from a court-martial should be dismissed (*see* R.C.M. 401(c)(1)) unless it is intended to refer them anew promptly or to forward them to another authority for disposition." If a charge is only withdrawn, the statute of limitations remains tolled. *Mucthison.*

Additionally, R.C.M. 604 indicates that withdrawal of charges only occurs after those charges have been referred to a court-martial. Thus both subsections (a) and (b) speak of withdrawal "from a court-martial," and the Discussion and Analysis

---

3. We presume that R.C.M. 707 accords with Article 10, UCMJ, 10 U.S.C. § 810, which per-

tains to speedy disposition of charges when the accused is in arrest or confinement.

of the Rule discuss withdrawal from a court-martial. This is only logical—until charges are referred to a court-martial there is no entity from which to withdraw these charges. Charges can only be withdrawn from a proceeding to which they have been formally referred.

Applying the facts to the law, it is clear that the original charges were dismissed by the actions taken on 30 October and 2 November 1990. The charges had not been referred to trial by court-martial at that time, and thus the commander's action was not a withdrawal of charges within the meaning of that term as it is used in military law. The charges were lined out, and a document was executed that stated that the charges were dismissed. Appellee was informed verbally of the dismissal. This action took place in late-October, early-November 1990 at a time when Operation Desert Shield was ongoing and rapidly expanding when no squadron commander could predict when the operation might cease and the witnesses could return to the United States. Clearly, the squadron commander did not then intend to refer them anew promptly, and we find it highly unlikely that he would have considered for a moment forwarding them to another authority in Southwest Asia for trial given the obvious military and logistical exigencies of the time. Appellee was under no form of restraint and was returned to regular military duties. He asked for and was granted annual leave. When the two absent witnesses became available, the charges were re-preferred and investigated anew. We cannot imagine what more could establish a dismissal of charges vice a withdrawal.

■ This Court in *United States v. Lorenc*, 30 M.J. 619 (N.M.C.M.R.1990), noted that the Court in *Britton* deduced the intent of the convening authority "as evidenced by the actions he took." *Lorenc* at 622. Certainly, the actions taken by the squadron commander in this case convincingly prove that he intended to dismiss the original charges. The military judge seemingly found that the commander intended merely to withdraw the charges because he intended to reinstitute them when the two witnesses became available. R.C.M. 707(b)(3)(A) and *Britton* make clear that an intent to reinstitute charges does not mean that an otherwise clear dismissal of charges is to be treated as a withdrawal under R.C.M. 707. In no way is the intent to reinstitute charges at a later date inconsistent with an intent to dismiss them presently.[4]

■ In rendering his findings of fact and conclusions of law, the military judge emphasized the lack of evidence establishing the witnesses' unavailability and the impracticability of returning them to the situs of the investigation or securing their depositions. Accepting the military judge's finding that no such evidence was introduced, we find this consideration to be entirely irrelevant. Under R.C.M. 707, the squadron commander could consider those factors if he chose in deciding whether to dismiss the charges, however, the commander was not limited to those considerations and could consider any relevant factor. If a commander decides to dismiss the charges and action is taken that does so, nothing in the Rule permits a trial judge to substitute his judgment for that of the commander regarding the relative merits of the dismissal. The Government bears no burden under the Rules for Courts–Martial to show a proper basis for dismissal of charges. The re-referral of withdrawn charges permits an accused to challenge the withdrawal on the basis that it was for an improper reason, *see* R.C.M. 604(b); we can find no similar basis for

---

4. We note that the Air Force Court of Military Review seemingly has come to a different conclusion. In *United States v. Mickla*, 29 M.J. 749 (A.F.C.M.R.1989), the Court used language that suggests that if later court-martial action is contemplated, that fact implies withdrawal or an attempt to place the charges in some sort of "limbo." If this language is more than dicta, we conclude that the Court was in error. Dismissal is appropriate if no further court-martial action against an accused is contemplated; however, if further action is contemplated after more than a brief period, dismissal is equally appropriate.

challenging a dismissal of charges.[5] Even if the Government bore such a burden, the trial judge could readily judicially note, as we now do, that in late-October, early-November 1990, the United States Marine Corps was engaged in a massive overseas deployment to confront a potential enemy that was widely thought to have large, well-equipped, experienced, and determined military forces. Under these circumstances, a commander's decision not to attempt to have two uniformed military police personnel transported from Southwest Asia to the United States, where they might have to remain for weeks for an investigation and trial, is patently reasonable and is based on a proper reason. Furthermore, while obtaining their depositions would facilitate the pretrial investigation, *see* R.C.M. 405(g)(4)(B), counsel and the accused would have to be flown into a potential combat zone in order to secure the depositions, *see* R.C.M. 702(g)(1)(A).

As part of the reasoning behind the dismissal with prejudice, the military judge balanced the seriousness of the offenses against the general goal of the prompt administration of military justice and concluded that in light of all the facts, particularly the fact that appellee was removed from working in his MOS and was "left in a backwater of suspicion," the weight of all pertinent factors tipped in favor of dismissing the charges with prejudice. Since dismissal of the charges had occurred, no 120–day speedy trial clock under R.C.M. 707 was running until charges were re-preferred. The time from re-preferral to appellee's arraignment, an event that under R.C.M. 707(b)(1) stopped the speedy trial clock, is less than 120 days; therefore, no R.C.M. 707 violation occurred. There was

no occasion for the military judge to balance the factors contained in R.C.M. 707(d) since they become relevant only upon a valid finding of a violation of the Rule.[6]

We therefore conclude that the military judge erred as a matter of law in dismissing these charges based on a violation of R.C.M. 707. Accordingly, the Government appeal is granted. The record of trial is returned to the Judge Advocate General for action consistent with this ruling.

Senior Judge JONES and Judge REED concur.

---

5. We do not decide whether an otherwise valid dismissal is in essence converted to some other action if done for a proven improper reason or in bad faith and the evidences establishes prejudice to the accused.

6. Even had a violation occurred, a commander's decision to reassign an accused to another duty assignment is not the kind of prejudice envisioned in R.C.M. 707(d). We agree fully with the Court in *United States v. Callinan*, 32 M.J. 701 (A.F.C.M.R.1991), that an accused may be reassigned to other normal military duties as an administrative decision, based on his alleged

misconduct, and nonetheless be returned to full-time military duties as that status is contemplated in *Britton* following dismissal of charges. We also note that the "backwater of suspicion" that may survive dismissal of charges may be no greater than that existing prior to preferral of charges. At any rate, that minimal prejudice alone generally does not affect an accused's ability to defend at trial and is minor in light of the draconian remedy of dismissal with prejudice of serious charges based on a violation of a nonconstitutional speedy trial right.