**UNITED STATES**

v.

**Airman Terry L. MICKLA, FR 568–15–2286, United States Air Force.**

**ACM 27665.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 14 Feb. 1989.

Decided 30 Oct. 1989.

---

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair; Captain Bernard E. Doyle, Jr. and Captain James M. Zarlengo.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Lieutenant Colonel Robert E. Giovagnoni; Major Terry M. Petrie and Major Thomas W. Hartmann, USAFR.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

The appellant asserts that the military judge erred by denying her motion to dismiss charges under R.C.M. 707 because she was not brought to trial within 120 chargeable days. We agree. The so-called "dismissal" of old charges and reinstitution of new charges ran afoul of the speedy trial provisions and regulatory framework of R.C.M. 306(c)(1), 401(c), and 707.

I

Court-martial charges were initially preferred at Carswell Air Force Base, Texas on 24 June 1988; the resulting Article 32 investigation was completed on 30 June and forwarded to the general court-martial convening authority's Staff Judge Advocate. The report was returned to Carswell on 19 July without action by the general court-martial convenor. Carswell's special court-martial convening authority was advised to consider amending the charges and specifications in various ways—to clarify the cocaine use specification by adding the words "on divers occasions;" to allege larceny *vice* attempted larceny; and to evaluate the possibility of charging the appellant with additional drug-related conduct, such as wrongful use of 3, 4 methylenedioxy methamphetamine ("Ecstasy") and codeine.

Though the general court-martial convening authority's guidance suggested the amendment and addition of charges, the special court-martial convening authority at Carswell *dismissed* all charges on 22 July, notifying the appellant of this disposition and advising that the purpose of dismissal was "to avoid the confusion occasioned by an amendment of existing charges." At the same time, the appellant was cautioned that "if appropriate, after reevaluation of the case, charges will be preferred anew and another Article 32, UCMJ Investigation will be conducted." At this point, only 28 days of R.C.M. 707's "120–day clock" had expired.

At this juncture, the Staff Judge Advocate and his staff discussed the possibility of an administrative discharge for the appellant rather than punitive action; pondered the possibility of developing new or additional evidence to support the proposed amendments; and generally reevaluated the case. During this time frame at Carswell, there was a heavy court-martial case-

load and the legal office was experiencing severe personnel shortages.

Some three months after this apparent dismissal of charges, "new" charges were preferred on 11 October 1988. The investigating officer completed her report, employing many of the statements obtained during the initial Article 32 investigation. On 27 December 1988, charges were referred to trial. In comparing the "old" charges to the "new" charges, the differences are these: (a) the wrongful use of cocaine originally charged between 1 May 1987 and 31 December 1987 now included the words "on divers occasions;" (b) the scheme of the appellant and her friend to engage in a sham marriage so as to gain additional financial benefits from the Air Force was alleged as a larceny of such funds under Article 121, 10 U.S.C. § 921 rather than an attempted larceny of the same funds under Article 80, 10 U.S.C. § 880; and (c) the wrongful use of "Ecstasy" was charged. Allegations of wrongful use of codeine and morphine never were litigated. Trial was set for 10 January 1989. After several defense-requested delays, trial was held on 13 February 1989. As to the "old" charges, this February date was well outside the requirement for trial within 120 accountable days.

At trial, the defense moved to dismiss charges under R.C.M. 707 on the ground that the "old" offenses had been improperly dismissed and that, as a result, the 120-day clock had run as to such matters. Testifying on the motion, the Staff Judge Advocate cast light on some of the reasons for reinitiating charges. He pointed to his heavy caseload and severe manpower shortages. He also stated that he hated "messy charge sheets" and amendments. He further testified that the Government never considered dropping all adverse action against the appellant, and that he had never discussed the possibility of the appellant being administratively separated with the convening authority.

The military judge denied the motion. He found that the purpose of dismissal in this case was not to facilitate a delay but rather to take a fresh look at the report of investigation in light of the recommendations of the general court-martial convening authority's Staff Judge Advocate. Though finding that "the delays in processing this accused's case are inexcusable, and tend to undermine the efficacy and reputation of the military justice system," the military judge found dismissal to be for a purpose "other than simply restarting the [120–day] clock."

We find that the military judge erred in not dismissing charges. It is elementary military law that an accused is entitled to a speedy trial. The 120–day rule which implements this doctrine is now firmly enshrined in military jurisprudence at R.C.M. 707. Applying that Rule, we are convinced that the Government failed to "dismiss" the old charges properly so as to stop the speedy trial clock. Simply stated, the so-called "dismissal" failed to conform to the regulatory framework created by R.C.M. 306(c)(1), 401(c), and 707. *See United States v. Fowler*, 24 M.J. 530 (A.F.C.M.R. 1987).

▮ Dismissal by the convening authority contemplates "that the accused no longer faces charges" and is "returned to full-time duty with full rights as accorded to all other servicemembers." *United States v. Britton*, 26 M.J. 24, 26 (C.M.A.1989) and R.C.M. 306(c)(1). That Rule states: *"No action.* A commander may decide to take no action on an offense. If charges have been preferred, they may be dismissed." Dismissal is thus an appropriate step when no further action against the accused is contemplated. *See also* R.C.M. 604.

▮ The Government cannot have its military justice cake and eat it too. Here, it is patent that the convening authority never intended anything but a court-martial. Therefore, the concept of "dismissal" —with its concomitant stopping of the sand in the speedy trial hourglass—is inappropriate. Instead of a valid dismissal, the authorities at Carswell likely fabricated either a withdrawal or what the Navy–Marine Court of Military Review recently labelled as "more of an attempt to create a 'limbo' status for these charges" until such

time as they could be perfected.[1] *See United States v. Mucthison*, 28 M.J. 1113, 1115 (N.M.C.M.R.1989). In either event, "freezing" the situation until one can get around to it is incompatible with R.C.M. speedy trial rules.

Applicable Rules for Court–Martial contemplate that charges are properly dismissed when they fail to state an offense, when unsupported by available evidence, or when other sound reasons exist why trial by court-martial is inappropriate. *See* Discussion, R.C.M. 401(c)(1). Here, no such satisfactory reason exists. Therefore, the Government has not met its burden of persuasion to justify a delay beyond 120 days in this case. *See United States v. Cook*, 27 M.J. 212, 215 (C.M.A.1988) and *United States v. Carlisle*, 25 M.J. 426, 428 (C.M.A. 1988). We believe it self-evident that the commander never intended to "dismiss" charges. It follows that, whatever the logistical and personnel problems in the Office of the Staff Judge Advocate, the time continued to run against the Government.[2]

The appellant was not brought to trial within 120 days of the notice to her of charges having been originally preferred on 24 June 1988, as required by R.C.M. 707. As the Court of Military Appeals indicated recently in *United States v. Maresca*, 28 M.J. 328, 331, n. 4 (C.M.A.1989), the 120–day rule is not a court-made rule. Rather, it was designed to protect an appellant's speedy trial rights under the Sixth Amendment and Article 10, UCMJ,[3] 10 U.S.C. § 810. We are bound to follow that standard.

## II

In the "new" Charges preferred on 11 October 1988, there is one specification which reflects matter not contained in some fashion in the "old" Charge Sheet: Charge I, specification 2 charges the wrongful use of "Ecstasy". Concededly, information that the appellant may have used this designer drug was available to the Government in various reports from the Office of Special Investigations at the time of the "old" charges; the offense was not charged because the base Staff Judge Advocate did not find sufficient evidence on which to move forward. However, when the Staff Judge Advocate to the general court-martial convening authority suggested reevaluation for additional charges, this *matter was alleged for the first time in the "new" Charge sheet.* Accordingly, under normal conditions we would say that

---

1. We commend the Staff Judge Advocate and all concerned with this matter for the forthcoming and gentlemanly way in which the speedy trial issue was presented and litigated. There is not the least whisper here of "gamesmanship" by the Office of the Staff Judge Advocate. Legal personnel assigned were extremely short-handed and busy, as the Staff Judge Advocate's testimony indicates. We in no way discern a scheme to win more time by dismissing charges today, only to reinstitute them tomorrow. *See United States v. Miller*, 26 M.J. 959, 960 (A.F.C. M.R.1988) and cases cited. Instead, we are convinced that Carswell authorities simply made an honest mistake in a rather complicated area of military jurisprudence. Despite such good-faith, we are convinced that R.C.M. 707 and current case law requires us to find error here.

   It is vital that military justice practitioners be alert to the ticking of the "120–day clock." That "clock" is as dangerous to judge advocates as was the timepiece the crocodile swallowed which so alarmed Captain Hook in Barrie's classic, *Peter Pan*.

2. Despite a heavy workload or absence of a full staff, the Government is still responsible for time delays. We believe *United States v. Mar-*

*shall*, 22 U.S.C.M.A. 433, 47 C.M.R. 409 (1973), a pre-Rules case, represents a correct statement of the law. *Marshall* considered whether reasons such as a heavy workload might win additional Government time. Refusing to so rule, the Court commented that these matters "are all conditions or circumstances for which the Government is responsible and for which allowance was made in the establishment of the 3–month standard." *See United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1986); *United States v. Givens*, 28 M.J. 888 (A.F.C.M.R.1989); *United States v. Jones*, 21 M.J. 819, 821 (N.M.C.M.R. 1985). *See also* Wittmayer, *Rule for Courts–Martial 707: The 1984 Manual for Courts–Martial Speedy Trial Rule*, 116 Mil.L.Rev. 221, 230 (Spring 1987).

3. If we were to permit the convening authority in this case to "dismiss" charges and then reinstitute them at a later date, what is to preclude any convening authority from utilizing such a procedure to circumvent the 120–day rule set forth in R.C.M. 707? Such an approach would defeat the very purpose of the Rule.

the appellant was successfully brought to trial by the Government within 120 days of the preferral of this offense. *See generally United States v. Grom,* 21 M.J. 53, 56 (C.M.A.1985). However, in *United States v. Reichenbach,* 29 M.J. 128 (C.M.A.1989), the Court of Military Appeals provided guidance on that designer drug. The end result is that the *use* of "Ecstasy" during the timeframe in question is not punishable. *See United States v. Reichenbach,* 29 M.J. at 137–138. Accordingly, we will dismiss this matter as well.

The findings and sentence in this case are hereby set aside and the Charges and specifications are

DISMISSED.

Judge MURDOCK concurs.

Senior Judge BLOMMERS (concurring):

I believe the present state of our law in the speedy trial arena as set forth in Senior Judge Kastl's opinion requires the result which we reach in this case.[1] That is not to say I agree with where the law stands. *Cf. United States v. Raichle,* 28 M.J. 876, 880 (A.F.C.M.R.1989) (Judge Blommers concurring).

My brothers seem to be saying that dismissal of the charges was an improper action on the convening authority's part under the circumstances present in this case. I disagree. There are several reasons why charges might be dismissed, with a determination that no further action is contemplated being just one of them. *See* R.C.M. 306(c)(1), 401(c)(1), as well as the Discussion under each rule. The Discussion section under Rule 401(c)(1) includes the following guidance:

A charge should be dismissed when it fails to state an offense, when it is unsupported by available evidence, or when there are other sound reasons why trial by court-martial is not appropriate.

\*　　\*　　\*　　\*　　\*　　\*

Charges may be amended in accordance with R.C.M. 603.

It is appropriate to dismiss a charge and prefer another charge anew when, for example, the original charge failed to state an offense, or was so defective that a major amendment was required (*see* R.C.M. 603(d)), or did not adequately reflect the nature or seriousness of the offense.

There were perfectly justifiable and proper bases for dismissal and subsequent reinstitution of the charges in this case, as it turned out. The offenses relating to use of cocaine and the pay allowances entitlement fraud (larceny) were changed to reflect more accurately the nature and seriousness of the misconduct. Other offenses were added. The changes also constituted major modifications to the charges, which could well have required dismissal of the original charges and repreferral in order to proceed to trial. R.C.M. 603(d) provides: "Changes or amendments to charges or specifications other than minor changes may not be made over the objection of the accused unless the charge or specification affected is preferred anew." *See also* R.C.M. 603(a).

In addressing accountability for time delays, R.C.M. 707(b)(2) provides: "If charges are dismissed, if a mistrial is granted, or—when no charges are pending—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date on which

---

1. In this regard I note that the appellant was in a student training status at the time her drug involvement came to light in January 1988. She was removed from training and placed in her unit's Facility Management section where she performed clean-up and maintenance duties (sometimes referred to as the "weeds and seeds" detail). She remained in that status until the date of her trial some 13 months later. A pro-motion she was due was also withheld. *See United States v. Britton,* 26 M.J. 24, 26 (C.M.A. 1988) where Judge Cox stated: "Dismissal, mistrial, and a break in pretrial restraint all contemplate that the accused no longer faces charges, that conditions on liberty and pretrial restraint are lifted, and that he is returned to full-time duty with full rights as accorded to all other servicemembers."

charges or restraint are reinstituted."[2] *See also* MCM, App. 21 at A21–37 (1984) (Analysis for Rule 707(b)(2)). Thus, there is a procedural basis under our rules for "stopping of the sand in the speedy trial hourglass."

In my judgment, our law should be postured so that a dismissal of charges for a legitimate reason stops the ticking clock unless it appears that the Government did so to "buy time," or that the accused's ability to prepare fully for trial was adversely affected by the delay (prejudice). *See generally* Article 46, UCMJ, 10 U.S.C. § 846; R.C.M. 701, 703. As Senior Judge Kastl points out, there are no such indications in this record. I believe that is what the drafters and the President intended in promulgating Rule 707(b)(2). The test I would apply is as follows: when this issue is raised at trial, the Government must establish by clear and convincing evidence (1) that charges were not dismissed to thwart the requirement contained in R.C.M. 707(a); and (2) that there has been no prejudice to the accused's substantial rights as a result of the delay between dismissal and reinstitution of charges. Article 59(a),

UCMJ, 10 U.S.C. § 859(a). This test would be a fair balance between the accused's right to a speedy trial and the Government's interests in insuring that court-martial charges are properly investigated, supported by the evidence and adequately reflect the nature and seriousness of the offenses involved. Such a test should also allay Senior Judge Kastl's concern that dismissal and later reinstatement of charges could be used to circumvent the 120–day rule. Applying this test, and based upon the record before us, I would affirm the approved findings of guilty and the sentence.

However, I do not believe my recommended method of resolving the issue in question has a supportable basis considering present military case law. I therefore concur in the result reached by this Court.

---

**2.** No form of "pretrial restraint," as that term is defined under military law, was imposed upon this appellant. R.C.M. 304.