**UNITED STATES**

v.

**Cheryl L. LORENC, 570 76 7068, Electronics Technician First Class (E–6), U.S. Navy.**

**NMCM 89 1851.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 28 Feb. 1989.

Decided 6 Feb. 1990.

Lt. Jacob R. Walker, JAGC, USNR, Appellate Defense Counsel.

Lt. J. Richard Chema, JAGC, USN, Appellate Government Counsel.

Before BYRNE, C.J., and ALBERTSON and JONES, JJ.

PER CURIAM:

Appellant pled to and was found guilty of two specifications of signing a false official document and two specifications of larceny in violation of Articles 107 and 121 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907 and 921, respectively. Both offenses arose from appellant's attempt to wrongfully obtain Basic Allowance for Quarters funds ($5,081.86) and Variable Housing Allowance funds ($3,496.04) by submitting two Dependency Application forms which falsely included the appellant's divorced husband as her dependent. A military judge sitting alone as a special court-martial sentenced appellant to reduction to pay grade E–1 and a bad-conduct discharge. The convening authority approved the findings and the sentence adjudged.[1]

At trial the appellant moved to dismiss the charges for a violation of the 120–day speedy trial provision of Rule for Courts–Martial (R.C.M.) 707, Manual for Courts–Martial, United States, 1984. Appellant contends that notice of preferral of the charges given appellant began the running of the R.C.M. 707 speedy trial clock, and that the convening authority failed to properly dismiss the charges after deciding to further investigate them; consequently, the Government exceeded the allowable time to bring appellant to trial. The military judge determined that the Government had borne its burden of showing that R.C.M. 707 had not been violated because he found that by the convening authority's proper dismissal of the preferred charges, the running of the speedy trial clock was stopped. Therefore, he found that the Government had brought appellant to trial within 120 days after notice of re-preferral of the charges. The military judge's essential findings are as follows:

1. Certain charges which are before the Court are similar to charges originally preferred on 30 August 1988.

2. The accused was given notice of preferral on 31 August 1988.

3. During notice of preferral the accused informed LN1 Dodd, the command Legalman, of certain factors that might very well affect the format of the charges, the forum selection, and even the decision whether or not to prosecute.

4. Due to the discovery of additional information from the accused, the Convening Authority in good faith essential-

---

1. The convening authority was permitted to approve the entire sentence adjudged because the pretrial agreement limited forum only, with the charges to be referred to a special court-martial with no sentence limitation.

ly dismissed the charges against the accused.

5. Although the charges were not lined out as recommended in the discussion under R.C.M. 401(c)(1), the other acts of the Convening Authority make clear that his intent was to dismiss the charge.

6. As recommended in the discussion to R.C.M. 401(c)(1), the accused was given immediate notice that the charges were being dropped.

7. Additionally, a memorandum was prepared and signed before referral of charges that the charges were dropped.

8. Also, all action by the command against the accused was terminated effective 31 August 1988; personnel within the command were told the accused was not on legal hold and that she was not currently under any disciplinary restraint. No action was taken towards the accused until 3 November 1988.

9. As recommended in the discussion to R.C.M. 401(c)(1) at the time of his action, the Convening Authority acted in good faith and appropriately by in essence dismissing the charges based on his belief that a substantial question existed whether the offenses were supported by the evidence and whether trial by court-martial was appropriate.

10. It was appropriate for the Convening Authority to dismiss; the fact that it was characterized as a withdrawal does not preclude the government from asserting that a new inception date is proper for the speedy trial clock.

11. There was no prejudice to the accused during the period 31 August 1988 to 3 November 1988.

12. Charges in accordance with R.C.M. 707(b)(2) were reconstituted and the speedy trial [clock] began anew under R.C.M. 707(a)(1) on 3 November 1988.

13. Although no evidence was presented by the government to contest responsibility for the delays from 3 November 1988 until the date of trial on 28 February 1989, the accused was brought to trial within 120 days in accordance with R.C.M. 707.

14. Therefore, the Defense Motion for Appropriate Relief on the grounds the accused was denied a speedy trial is denied.

■■■ The issue presented is whether the military judge erred in ruling that the Government had borne its burden of showing that the appellant had not been denied his right to a speedy trial because the convening authority, despite his inartful use of the term "withdrawal," actually "dismissed" the preferred charges thus stopping the running of the 120–day clock of R.C.M. 707.[2] We adopt the military judge's well-reasoned ruling as our own. Because the military judge's ruling preceded this Court's decision in *United States v. Mucthison,* 28 M.J. 1113 (NMCMR 1989), which closely parallels the present case, we believe it necessary for us to fully set forth our analysis to distinguish the two cases. Since our decision in *Mucthison* essentially follows United States v. Britton, *26 M.J. 24 (C.M.A.1988), our analysis will begin with an examination of that case.*

In *Britton,* the Court of Military Appeals examined the difference between a withdrawal of charges and a dismissal of charges and the effect this difference has upon the running of the 120–day speedy trial clock. When charges are merely withdrawn pursuant to R.C.M. 604(a), the accused still faces the charges, still remains under restraint, and does not return to full duty. It is because these onerous conditions continue to exist that the Discussion underlying R.C.M. 604(a) encourages the convening authority to dismiss charges that have been withdrawn unless it is contemplated that the charges will be promptly referred anew or forwarded to another authority for disposition. On the other hand, a dismissal of charges pursuant to R.C.M. 401(c)(1) means that the accused no longer faces the charges, no longer remains under any form of restraint and is returned to full duty. *Britton,* at 26. This

---

2. The appellant's pleas of guilty do not waive the speedy trial issue. *United States v. Davis.* 11 U.S.C.M.A. 226, 29 C.M.R. 226 (1960); *United*

*States v. Angel,* 28 M.J. 600 (NMCMR 1989) (*en banc*).

difference is important because unless the convening authority acts to dismiss the charges, and not merely withdraw the charges, R.C.M. 707(b)(2) does not apply, and the speedy-trial clock continues to run.

This differing impact on the running of the speedy trial clock required the Court in *Britton* to determine whether the convening authority had dismissed the charges, thereby stopping the speedy trial clock or whether he had only withdrawn the charges. The Court in *Britton* analyzed the intent of the convening authority as evidenced by the actions he took and found that the convening authority had not acted to dismiss the charges, but instead acted only to withdraw the charges. Therefore, the speedy trial clock in *Britton* continued to run uninterrupted and the charges were dismissed for a violation of R.C.M. 707.

In *Mucthison* we also found that the Government had failed to carry its burden of showing that the 120–day speedy trial clock of R.C.M. 707 had not been violated after the defense had raised the issue. *Mucthison* at 1115. A number of key witnesses in *Mucthison* testified that the convening authority had intended to manipulate the speedy trial clock by placing the charges "in limbo" so that they could be further investigated. Not one witness testified that the convening authority wanted to dismiss the charges; instead all the witnesses testified that the charges were only intended to be "withdrawn." Furthermore, the Government failed to document its action properly, neither producing and entering the "withdrawal" letter as evidence nor lining out the specifications on the charge sheet as recommended by the Discussion to R.C.M. 401(c)(1). Finally, we noted in *Mucthison* that the attempt by the convening authority to "withdraw" the preferred charges was a meaningless act because the

charges had not yet been referred to a court-martial.

Despite the similarities between *Mucthison* and the present case, certain important facts are sufficiently different to distinguish the two. The similar facts are that both convening authorities desired to further investigate the preferred charges, that both convening authorities attempted to "withdraw" the charges which had not yet been referred, and that the specifications on the charge sheets had not been lined out.

Factually different from *Mucthison*, the convening authority here fully intended to dismiss the charges and demonstrated that intent by removing the restraint placed on the accused and by returning her to full duty while the charges were further investigated. The appellant was informed of this action by a "withdrawal" letter that was entered as evidence by the Government. The trial judge specifically found that the convening authority, in deciding to dismiss the charges, had acted in good faith according to his duties enunciated in R.C.M. 401 and as further described in the Discussion to R.C.M. 401(c)(1). Finally, the military judge found that the appellant had suffered no prejudice as a result of the convening authority's action.

These important factual differences lead us to conclude that the military judge correctly ruled that the convening authority *dismissed* the preferred charges, despite his inartful and meaningless use of the term "withdraw" [3] and the Government's failure to line out the specifications on the charge sheet.[4] Accordingly, we hold that the Government bore its burden of showing that the original speedy trial clock was halted by the dismissal and that upon notice of re-preferral the appellant was

---

3. A proper understanding and use of the terms "preferral," "referral," "dismissal," and "withdrawal" would have avoided this issue.

4. Paragraph 32(d), Manual for Courts–Martial, United States, 1969 (Rev.), stated that dismissed charges "will be lined out and initialed." In the 1984 Manual for Courts–Martial this language was left out of R.C.M. 401 completely and instead placed in the Discussion to R.C.M.

401(c)(1) in a modified form. The Discussion now advises that "[c]harges are ordinarily dismissed by lining out and initialing the deleted specifications or otherwise recording that a specification is dismissed." Clearly, there is no longer only one way to memorialize a dismissal; any recording will suffice that evidences the convening authority's intent to dismiss the specifications and the charges.

brought to trial within 120 days as required by R.C.M. 707. The findings and sentence approved below are affirmed.