UNITED STATES

v.

Fredrick L. ROBINSON, 427–04–7228 Aviation Structural Mechanic (Hydraulics) Second Class (E–5) U.S. Navy.

NMCM 96 01270.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 1 Dec. 1995.

Decided 25 July 1997.

Paulson, J., filed a dissenting opinion.

Maj Michael R. Osborn, USMC, Appellate Defense Counsel.

LT John J. Luke, JAGC, USNR, Appellate Defense Counsel.

LT Bennett J. Lee, JAGC, USNR, Appellate Government Counsel.

Before DOMBROSKI, LUCAS and PAULSON, Appellate Military Judges.

LUCAS, Senior Judge:

Contrary to his pleas before a general court-martial, composed of officer and enlisted members, the appellant was convicted of two specifications of indecent assault, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1994) [hereinafter UCMJ]. The alleged victims were his young daughter (A) and a neighbor-child (C). The convening authority approved the adjudged sentence of reduction to pay grade E–1, confinement for 12 months, and a dishonorable discharge. We have examined the record of trial, the assignments of error,[1] and the Government's response thereto, and conclude that the findings and sentence must be set aside.

■ Regarding Assignment of Error I, we agree with the appellant that the convening authority violated RULE FOR COURTS-MARTIAL 707(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.) [hereinafter R.C.M.], by failing to bring him to trial within 120 days of the initial preferral of the Charge and its specifications. R.C.M. 707(a)(1), 707(b)(1). Even though we find no specific resultant prejudice to the appellant, we hold that dismissal of the Charge and its specifications is mandatory. R.C.M. 707(d). Because of our resolution of Assignment of Error I, we need not address the remaining assignments of error.

■ To resolve this assigned error, we interpreted R.C.M. 707(b)(3)(A)(i). That provision of the President's speedy-trial rule, as it applies to this case, indicates that "if charges are dismissed ... a new 120–day time period ... shall begin on ... the date of repreferral." The question before us is whether a convening authority has the absolute power to reset the R.C.M. 707 speedy-trial clock by dismissing unreferred charges at any time prior to day 120 on the clock. We hold that a convening authority does not have unlimited power to reset the clock. The following events are key to the disposition of this case.

On 9 March 1995, a single charge was preferred together with several specifications of indecent assault and indecent acts against victims A and C. The R.C.M. 707 speedy-trial clock started on that date. R.C.M. 707(a)(1). The charge and specifications were based upon statements provided by the two victims to the Naval Criminal Investigative Service (NCIS).

On day 60 of the speedy-trial clock, an Article 32, UCMJ, 10 U.S.C. § 832, pretrial investigation hearing was held. R.C.M. 405. The Government invited A and C to appear and testify at the hearing, but both declined. Because the Government could not issue a subpoena for A and C for such a hearing, their appearance could not be forced. Art. 46, UCMJ, 10 U.S.C. § 846; R.C.M. 405,

---

1. I. THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL PURSUANT TO R.C.M. 707 BECAUSE THE PURPORTED WITHDRAWAL AND DISMISSAL OF CHARGES ON 7 JULY 1995 AND THE SUBSEQUENT RE–PREFERRAL OF THE SAME CHARGE FIVE DAYS LATER CONSTITUTED A GOVERNMENT SUBTERFUGE TO AVOID A VIOLATION OF R.C.M. 707.
II. THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO SEVER SPECIFICATIONS 2 AND 4 OF THE CHARGE. (Footnote and references omitted.)
III. THE MILITARY JUDGE ERRED TO APPELLANT'S PREJUDICE WHEN HE GAVE AN ERRONEOUS PRELIMINARY INSTRUCTION TO THE MEMBERS THAT THE APPELLANT WAS PRESUMED TO BE NOT GUILTY, AS OPPOSED TO BEING PRESUMED INNOCENT. (Reference omitted.)
IV. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY OF THE CHARGE BEYOND A REASONABLE DOUBT BECAUSE THE ALLEGED VICTIMS WERE NOT CREDIBLE WITNESSES. (Footnote and Reference omitted.)
V. A SENTENCE WHICH INCLUDES A DISHONORABLE DISCHARGE IS INAPPROPRIATELY SEVERE UNDER THE CIRCUMSTANCES OF THIS CASE.

703(e)(2). Instead, an NCIS agent testified at the hearing and gave information about the alleged offenses provided to that agent by A and C. Additionally, written results of NCIS interviews with other witnesses were admitted at the hearing. On day 87, after considering all the admitted evidence, the hearing officer recommended against referral, concluding that the evidence did not support the allegations. R.C.M. 405(j)(2)(I).

On day 110, the assigned Government counsel, referring to R.C.M. 707(c), asked the pretrial investigation appointing authority for 14 days excluded time (excluded from speedy-trial consideration) to obtain additional evidence to support the allegations against the appellant. The appellant's defense counsel responded to that request by asking for an expeditious disposition of the case. The appointing authority elected not to grant the Government counsel's request for excluded delay.

■ On day 115, the Government counsel interviewed C for the first time. During that interview, C indicated that the alleged offenses against her actually had occurred several months before the date alleged on the charge sheet. The Government, in its pleadings, now makes some vague assertions that neither A nor C were made available to Government counsel for interview until C was interviewed on day 115. The Government implies that C's "new" evidence about the conflict in dates came as a surprise and required reformation of the charge sheet. However, after closely examining the entire record, we find, as a factual matter, that both victims were always available to be interviewed by Government counsel, even though it is clear that neither would testify at the pretrial hearing. We conclude that the Government counsel elected not to interview the alleged victims until the hearing officer found the Government's case to be deficient. We also conclude that the correct date of the offenses against C could have been discovered much earlier by the Government counsel through due diligence.

On day 120, the pretrial investigation appointing authority directed that the preferred charge and specifications be dismissed. Both parties agree that 5 of those

120 days are excluded from speedy-trial consideration because of a defense requested delay. This appointing authority had special court-martial convening authority power. He could therefore have excluded delay under R.C.M. 707(c), as requested by Government counsel, but elected not to do so. The appointing authority also had the power to dismiss the charge and specifications. R.C.M. 404(a). The charge and specifications were thereafter lined out at the appointing authority's direction and marked "dismissed without prejudice."

Five days after that dismissal action, a new charge and half as many specifications of indecent assault and indecent acts committed upon A and C were preferred. The appellant was officially notified that same day that the original charge and specifications had been dismissed, and he was simultaneously provided with a copy of the new charge sheet. The differences between the old and new charge sheets are minor. Half of the specifications were eliminated through joinder and the date of the alleged offenses against C was changed by several months to match the information she provided to Government counsel on day 115. In all other respects, the two charge sheets are identical.

A second pretrial investigation hearing was subsequently conducted. This time C testified. The only new evidence presented at that second hearing pertained to the new alleged date for the offenses against C. The only other evidence considered by the second hearing officer was the first hearing officer's report. The second hearing officer recommended referral.

After a defense demand for a speedy trial, followed by referral, arraignment on the second charge sheet on 3 November 1995 stopped the R.C.M. 707 clock. R.C.M. 707(b)(1). That arraignment occurred 234 days from the preferral date of the original charge sheet and 114 days from the preferral date on the second charge sheet.

The Government contends that R.C.M. 306(c)(1), 401(c), and 707(b)(3)(A) gave absolute discretion to the appointing authority to dismiss the original charge and specifications on the 115th chargeable day and thus reset

the speedy-trial clock to zero. The Government argues that a convening authority (the appointing authority in this case) need not give a reason for such a dismissal, and need not establish that the dismissal was done in good faith. The Government maintains, however, that dismissal was either required or permissible in this case because the evidence initially did not support the allegations against the appellant, additional time was needed to obtain more evidence, that new evidence obtained from C concerning the correct date of offenses against her required a major modification to the charge sheet, and that half of the specifications had to be combined. *See* Discussion, R.C.M. 401(c)(1). The Government further contends that, following the dismissal, the appointing authority was not barred from proceeding toward trial with the same allegations, that the speedy-trial clock was started anew with the second preferral, that the second set of allegations had to be investigated and then referred, and that R.C.M. 707 was not violated because arraignment on the second set of offenses occurred within 120 days of their preferral.

The appellant contends that the dismissal on the 115th chargeable day was a sham, or subterfuge, done solely to avoid the 120–day clock. He argues that the dismissal action was not taken because witnesses or evidence were unavailable for trial, to obtain additional evidence to support the allegations, or for any other legitimate reason. He maintains that the dismissal action was taken for one reason, to reset the speedy-trial clock. The appellant notes that no additional evidence was actually gathered by the Government during the 5–day period between dismissal and repreferral. He contends, and we agree, that simple joinder of half of the specifications would not require dismissal and repreferral. The appellant argues that the substance of the repreferred specifications is essentially identical to the substance of the original specifications. He contends that the dismissal was legally ineffective in resetting the speedy-trial clock and that the original clock should therefore apply to the repreferred specifications. The appellant concludes, because arraignment occurred well beyond the allowable 120 days from the initial preferral date, that an R.C.M. 707 violation resulted.

The appellant also contends that the dismissal action should be treated by this court as a withdrawal. We do not agree. *See* R.C.M. 401(c)(1), 604(a), and the Discussions following those rules, for a Presidential comparison between dismissal and withdrawal. We have found several reported cases in which this court and our superior court have gone behind the purported action of a convening authority to resolve the pure legal question of whether the action amounted to a withdrawal of charges or a dismissal of charges. *United States v. Britton*, 26 M.J. 24 (C.M.A.1988); *United States v. Bolado*, 34 M.J. 732 (N.M.C.M.R.1991), *aff'd*, 36 M.J. 2 (C.M.A.1992)(summary disposition), *cert. denied*, 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 242 (1993); *United States v. Lorenc*, 30 M.J. 619 (N.M.C.M.R.1990); *United States v. Mucthison*, 28 M.J. 1113 (N.M.C.M.R.1989). The distinction between withdrawal and dismissal is significant.

■ The universally accepted rule is that withdrawal of charges does not stop or reset the R.C.M. 707 speedy-trial clock. *Britton*, 26 M.J. at 26; *Lorenc*, 30 M.J. at 621–22; *Mucthison*, 28 M.J. at 1115; R.C.M. 707(b)(3)(A). However, the action by the appointing authority in the instant case on day 120 could not, as a matter of law, amount to withdrawal of charges because there had not yet been referral of those charges to a court-martial. *Bolado*, 34 M.J. at 737–38; R.C.M. 604(a). We will not treat the purported dismissal as a withdrawal, as the appellant asks us to do. However, we will determine whether the dismissal action was legally effective in resetting the speedy-trial clock under the specific facts of this case.

Just as this court and others have examined the actions of a convening authority to determine whether those actions resulted in a withdrawal or whether they resulted in a dismissal, it follows that we may examine the actions of a convening authority to determine whether a purported dismissal was a subterfuge, done solely to avoid the 120–day clock.

Although the impact of a withdrawal on the speedy-trial clock is clearly recognized and expressly stated in the case law, the

effects of a dismissal action are not as extensively analyzed. Within the body of military case law, once a dismissal is found (instead of a withdrawal), approval by appellate courts of the resetting of the speedy-trial clock seems to follow without much discussion. We have not found any reported military case in which the issue of subterfuge dismissal was raised by an appellant, analyzed, and resolved. Additionally, except for some ambiguous and somewhat contradictory dicta by this court in *Bolado,* 34 M.J. at 738, and in footnotes 4 and 5 at 738–39, we have found no case squarely addressing the issue of whether a convening authority has unfettered discretion to dismiss preferred but unreferred charges at any time before the 120th chargeable day on the speedy-trial continuum and thereby effect a resetting of the speedy-trial clock. Similarly, we have found no case, except for the conflicting language in *Bolado* referred to above, indicating whether a convening authority must show good cause, or at least a lack of bad faith, in order to dismiss such charges at some point along that time-line in order to reset the speedy-trial clock.

■ However, when there is truly an effective dismissal of charges, all conditions or constraints on liberty are removed, charges are no longer pending, all pretrial restraint is lifted, the accused is returned to full duty, and the accused is provided with all rights and privileges of other uncharged servicemembers. *Britton,* 26 M.J. at 26. These are all important indicators of a significant change in the legal status of a servicemember. In the appellant's case, we find that there was no such status change. The conditions and constraints initially placed on the appellant never changed during the period between the dismissal action and repreferral. They included legal hold, suspension of transfer orders, inability to work in his assigned area of expertise, and restrictions on his ability to take leave.

■ We have no doubt that the convening authority had unfettered discretion to dismiss the charge and specifications. That is not the key issue. The real issue is whether such dismissal always results in a resetting of the speedy-trial clock. Under the unique circumstances of this case, we hold that the R.C.M. 707 speedy-trial clock was not reset by the dismissal action of the appointing authority on day 120 (115th chargeable day). We hold that the dismissal was a subterfuge, done solely to avoid the 120–day clock. Because the dismissal action was a subterfuge, it was legally ineffective in resetting the speedy-trial clock. Because the clock was not reset, arraignment occurred on day 234, resulting in an R.C.M. 707 violation.

Any different conclusion or interpretation of R.C.M. 707(b)(3)(A)(i) would completely frustrate the recognized, fundamental Presidential purpose of R.C.M. 707, which is to ensure constitutional speedy-trial rights. *United States v. Edmond,* 41 M.J. 419, 421 (1995). Under the unique facts of this case, the conflict between the broad discretion of the convening authority to dismiss must yield to the important right of the appellant to a speedy trial.

Were we to conclude that the dismissal action on day 120 did reset the clock, R.C.M. 707(a) would become meaningless and the protection of R.C.M. 707 would effectively be eliminated. We do not believe that the President would require that an accused be brought to trial within 120 days, except when a convening authority dismisses preferred but unreferred charges solely to reset the clock. Such a result would effectively make individual convening authorities the rule makers instead of the President. To carry the Government's position to its logical extreme, there would be no R.C.M. 707 violation even if a convening authority were to repeatedly dismiss preferred but unreferred charges on day 119 of the speedy-trial clock just to reset the clock. We find such a possibility to be contrary to the clear intent of R.C.M. 707 and incompatible with our notion of justice.

Our holding is intended to be very narrow in scope, and limited to the unique facts of this case. We make no general holding that R.C.M. 707(b)(3)(A) is in some way defective, that a convening authority must always give a reason for dismissal under that specific rule, that a convening authority does not have the absolute discretion to dismiss charges, or that dismissal of preferred but

unreferred charges can never result in a resetting of the speedy-trial clock when there is no apparent change in the legal status of an accused. Also, we do not address any issue pertaining to dismissal of referred charges, which may by necessity include withdrawal and therefore some restrictions on the power to rerefer. *See* R.C.M. 604. Specifically, we hold that, under the circumstances of this case, where: (1) dismissal on day 120 (115th chargeable day) of preferred but unreferred charges was for the sole purpose of avoiding the 120–day rule; (2) repreferral of essentially identical specifications occurred 5 days later; (3) there was no practical interruption in the pending charge and specifications; and (4) there was no real change in the legal status of the appellant during that 5–day period; the dismissal action was a subterfuge and thus ineffective in resetting the speedy-trial clock. In effect, the convening authority improperly manipulated R.C.M. 707 in order to almost double the time allotted by the President to bring the appellant to trial, despite the fact that the appellant twice asked for a speedy resolution of his case.

Accordingly, the findings and sentence are set aside. The Charge and its specifications are dismissed. After analyzing the factors listed in R.C.M. 707(d), we dismiss without prejudice. A rehearing on the Charge and its specifications is therefore authorized.

Chief Judge DOMBROSKI concurs.

PAULSON, Judge (dissenting):

Although not expressly raised as an issue on appeal, I find no violation of the appellant's 6th Amendment right to a speedy trial. Weighing the factors set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), I find no prejudice to the substantial rights of the appellant, particularly since he was not in pretrial confinement.

Also, I find no violation of RULE FOR COURTS-MARTIAL 707, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.] The majority opinion has appeal in logic, and I am concerned about the "learning point" which might be drawn from affirming the military judge's denial of the appellant's motion to dismiss. An extension of the Government's position would be that whenever time is running out, the trial counsel or staff judge advocate should recommend to the convening authority that he or she simply dismiss the charge, and start anew the speedy trial clock. The Government could thereby evade the 120–day time limit by filing a dismissal even as late as the 119th day.

Nonetheless, I feel compelled to follow an earlier decision of this court, *United States v. Bolado,* 34 M.J. 732, 738 (N.M.C.M.R.1991), *aff'd,* 36 M.J. 2 (C.M.A.1192), *cert. denied,* 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 242 (1993). However, I would choose this occasion to eliminate the confusion resulting from dicta in that opinion, in footnotes 4 and 5, by finding that a convening authority may, for any reason, dismiss charges pursuant to R.C.M. 306(c)(1) and 401(c)(1).

Nothing in the R.C.M. purports to limit the discretion of the convening authority in deciding whether or not to proceed on charges after either preferral or referral. Indeed, the Discussion to R.C.M. 401(c)(1) only suggests that "a charge *should* be dismissed when it fails to state an offense, when it is unsupported by available evidence, or when there are other sound reasons why trial by court-martial is not appropriate." Emphasis added.

A dismissal is appropriate even if the convening authority fully intends to reinstate the charges. The Discussion to R.C.M. 306(c)(1) states that "dismissal of charges at this stage does not bar later disposition of the offenses under subsection (c)(2) through (5) of this rule." Similarly, the Discussion to R.C.M. 401(c)(1) states that "it is appropriate to dismiss a charge and prefer another charge anew when, for example, the original charge failed to state an offense, or was so defective that a major amendment was required (see R.C.M. 603(d)), or did not adequately reflect the nature or seriousness of the offense."

This is so, despite the fact that the impact of a dismissal without prejudice is that the speedy trial clock is reset, beginning anew the 120–day time period within which the accused must be brought to trial. R.C.M. 707(b)(3)(A). Indeed, the time period does

not begin to run again until the date of re-preferral of charges or the imposition of restraint, whichever first occurs.

Without question, a clear reading of R.C.M. 707(b)(3)(A) and *United States v. Britton*, 26 M.J. 24, 26 (C.M.A.1988) supports the conclusion that "in no way is the intent to reinstitute charges at a later date inconsistent with an intent to dismiss them presently." *Bolado*, 34 M.J. at 738. In that regard, this court's commentary suggesting that "if further action is contemplated *after more than a brief period*, dismissal is equally appropriate," *Bolado*, 34 M.J. at 738, n. 4 (emphasis added), is merely dicta. Such commentary is inconsistent with the Rules and is not supported by authority.

A dismissed charge (unlike a charge withdrawn after referral) is not in "limbo." *United States v. Mucthison*, 28 M.J. 1113, 1115 (N.M.C.M.R.1989); *United States v. Lorenc*, 30 M.J. 619, 622 (N.M.C.M.R.1990). Indeed, when a charge is dismissed, it is necessary to reinstitute the charge and commence proceedings anew. *Britton, supra*, at 26.

In support of my view that the military judge's ruling which denied appellant's motion to dismiss for violation of R.C.M. 707 should be affirmed, I look primarily to this court's decision in *Bolado*, wherein we opined:

> Under R.C.M. 707, the [convening authority] could consider those factors he chose in deciding whether to dismiss the charges, however, that commander was not limited to those considerations and could consider any relevant factor. If a commander decides to dismiss the charges and action is taken that does so, *nothing in this Rule permits a trial judge to substitute his judgment for that of the commander regarding the relative merits of the dismissal. The Government bears no burden under the Rules for Courts–Martial to show a proper basis for dismissal of charges.* The re-referral of withdrawn charges permits an accused to challenge the withdrawal on the basis that it was for an improper reason, *see* R.C.M. 604(b); we can find *no similar basis for challenging a dismissal of charges.*

*Bolado, supra*, at 738–739 (emphasis added). Curiously, however, this court thereafter noted:

> We do not decide whether an otherwise valid dismissal is in essence *converted* to some other action if done for a proven improper reason or in bad faith and the evidence establishes prejudice to the accused.

*Id.* at n. 5 (emphasis added). Simply put, the majority opinion in the case *sub judice* attempts to craft such a conversion.

The "slippery slope" down which the majority proceeds has its genesis in the now disfavored case of *United States v. Mickla*, 29 M.J. 749 (A.F.C.M.R.1989). In that case, the Air Force Court of Military Review found no "satisfactory reason" for the dismissal of charges. In a subsequent case, however, the same court found that

> [c]hange 5 to the Manual establishes a new rule for the running of the speedy trial clock which postdates our holding in *Mickla*. Accordingly, to the extent that this decision is contrary to *Mickla*, that decision is rejected and will no longer be followed as precedent.

*United States v. Thomas*, 41 M.J. 665, 667 (A.F.Ct.Crim.App.1994). Also distancing itself from the position engendered by *Mickla* was the Army Court of Military Review in *United States v. Hayes*, 37 M.J. 769, 772 (A.C.M.R.1993). Acknowledging that "decisions granting pretrial delay will be subject to review for abuse of discretion and for reasonableness of the delay (Citations omitted)," the court stated that "[i]f, however, charges are dismissed, a new 120–day time period shall begin when ... charges are repreferred. (Citation omitted)."

In *Hayes*, not unlike one of the government's stated reasons for dismissal in the case before us, the dismissal was "for the purpose of delaying the proceedings to secure additional evidence." The *Hayes* court continued, "we cannot say that the convening authority erred in dismissing the charges, given his wide discretion regarding dismissal of charges." *Hayes*, 37 M.J. at 772.

Since I find no violation of R.C.M. 707, an analysis of the government's actions (i.e., ex-

amining the propriety of the reasons for the dismissal) is neither required nor appropriate. Were I so inclined, however, I could point to several "proper" reasons for the convening authority's decision to dismiss the charge. The record of trial discloses, among other things: (1) a need to obtain additional evidence, e.g. a complete statement from victim A, whose previous statement to an investigator did not yield specifics concerning her generic allegations of abuse; (2) a major change or amendment to the Charge necessitated by the significant difference in the date of the alleged offense against victim C (especially in light of the defense asserted at the first Article 32 hearing); and (3) the likelihood that a new Article 32 hearing would be necessary. Nonetheless, I specifically do not rely on these reasons because, as a matter of law, no such reasons are required. Further, a reliance on such "proper" reasons for a dismissal only serves to give credence to the majority's unfounded belief that it is necessary to do so.

While it may seem unfair that a convening authority should have virtually unbridled discretion in dismissing a charge, this matter could easily have been remedied by the President in drafting the revision to R.C.M. 707. For example, the convening authority could have been required to state specific and articulable reasons for a dismissal, subject to review by the military judge for abuse of discretion. However, the President did not so draft R.C.M. 707. Unlike the majority, I would not judicially create a remedy that the President did not clearly intend to provide.

For the reasons set forth above, I would affirm the decision of the military judge which denied the appellant's speedy-trial motion.