CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 VINCENT MATTHEW B. MACARIO**
**United States Army, Appellant**

ARMY 20160760

Headquarters, Fort Riley
J. Harper Cook, Military Judge
Lieutenant Colonel Joseph B. Mackey, Staff Judge Advocate

For Appellant:  William E. Cassara, Esquire (on brief); Captain Zachary Szilagyi, JA; William E. Cassara, Esquire (on reply brief).

For Appellee:  Lieutenant Colonel[1] Eric K. Stafford, JA; Major Wayne H. Williams, JA; Captain KJ Harris, JA (on brief).

12 October 2018

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

Per Curiam:

Appellant challenges his rape conviction on factual and legal sufficiency grounds, claims that his sentence was impermissibly harsh when compared to his coactor's sentence, and contends that he did not receive a speedy trial.  Finding no error, we affirm.[2]

---

[1] Corrected

[2] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of rape by force, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. §920 (2012) [UCMJ].  The military judge

(continued . . .)

**BACKGROUND**

Appellant's rape conviction stemmed from his actions inside a small shed next to his family's quarters on Fort Riley, Kansas, in the early morning hours of 27 September 2015. The victim, MS, was appellant's next-door neighbor, and was married to Army Private First Class (PFC) JA. Prior to 26-27 September 2015, MS and PFC JA had been friendly with appellant and his wife. MS had also recently met appellant's friend, Army Specialist (SPC) Rodriguez.

On the evening of 26 September 2015, MS and PFC JA quarreled loudly. Specialist Rodriguez–who, along with others, had been visiting appellant next door– heard the fight, and approached MS outside of her house. Specialist Rodriguez asked if "everything was okay," and invited her and PFC JA to go to a bar with the group. MS declined, but said SPC Rodriguez could text her when the group returned from the bar so that they could come to appellant's house to socialize. MS then returned home, took two shots of alcohol, and reconciled with PFC JA. Later, the couple drank a shot together (MS's third).

Around 0200 or 0300 on 27 September 2015, appellant and SPC Rodriguez knocked on MS's and PFC JA's door. PFC JA was asleep, but MS was still awake, watching a movie. Appellant and SPC Rodriguez invited MS and PFC JA to appellant's house. MS initially declined because PFC JA was asleep, but ultimately agreed. At appellant's house, appellant handed MS a beer, asked about the loud fight, and told MS that she "deserved better" and should leave PFC JA. MS told appellant that the two had "made up" and that she "loved" PFC JA. MS drank the beer, along with three more shots of alcohol.

A group from the gathering, including MS, appellant, SPC Rodriguez, and SPC Wick, walked to a nearby park. At the park, while MS and SPC Wick sat on the swings, appellant and SPC Rodriguez engaged in a conversation behind them on a bench. On the walk back to appellant's house, SPC Rodriguez lagged behind the group. MS went back to him; SPC Rodriguez put his hands on MS's hips, and attempted to kiss her. MS pushed SPC Rodriguez away, telling him, "You are drunk. Let's just forget about it."

---

(. . . continued)

acquitted appellant of one specification of sexual assault and one specification of adultery, in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920 and 934 (2012). The military judge sentenced appellant to a dishonorable discharge, confinement for 66 months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence. This case is before us for review pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c).

As the group approached appellant's house, appellant "rush[ed]" up to MS and SPC Rodriguez and said that PFC JA was "looking for" MS and was "really mad."[3] Appellant said that he and SPC Rodriguez would talk to PFC JA, and that, in the meantime, they would "hide" MS in a small storage shed located to the rear of MS's and PFC JA's quarters. Feeling "confused" as to "why [PFC JA] was mad," and feeling the effects of the alcohol, MS acceded as the two guided her inside the shed and closed the door.

Five to ten seconds later, appellant and SPC Rodriguez entered the shed. MS asked, "what's going on," to which SPC Rodriguez responded by asking MS if she could "keep a secret." MS responded "yes." At that, appellant began touching MS's chest, and SPC Rodriguez began touching her waist. MS said repeatedly, "[n]o, I don't want to do this," and "Stop. I love [PFC JA]." Specialist Rodriguez pulled MS's sweatpants down, bent her over so that her head was facing appellant, and penetrated her vulva with his penis. Appellant simultaneously "took one of his hands and put his fingers on the outside of [MS's] cheeks and began pushing in," "prying" MS's mouth open. With his other hand, appellant inserted his penis into MS's mouth. Appellant and SPC Rodriguez "both began thrusting." MS, "panicking," and realizing there was "no way out," tried to "block . . . out" the assault. The next thing MS remembered was appellant and SPC Rodriguez opening the shed door, adjusting their pants, and stepping out.

Immediately after the assault, MS woke up her husband, called her mother, and called the military police. DNA analysis later detected SPC Rodriguez' semen in MS's mouth (to a certainty of 1 in 4.3 quadrillion); MS's DNA in SPC Rodriguez' underwear (1 in 67 quadrillion); MS's DNA on Rodriguez' penis swab (1 in 73 quadrillion); MS's DNA on appellant's underwear (1 in 40 quadrillion); and MS's DNA on appellant's penis swab (1 in 32 trillion), and scrotum (1 in 82 billion).

## LAW AND DISCUSSION

### A. *Legal and Factual Sufficiency*

Appellant asserts that the charged "force" element in his rape by force claim, grabbing of MS's mouth with his hand, was legally insufficient to sustain a conviction for rape by force, and that the government's evidence was also factually insufficient. We disagree, and find the evidence both legally and factually sufficient.

We review claims of legal and factual insufficiency de novo, examining all of the evidence properly admitted at trial. Art. 66(c), UCMJ; 10 U.S.C. § 866(c).

---

[3] This was untrue. Private First Class JA was still asleep at home.

*United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the contested crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The test for factual sufficiency is whether after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

As to appellant's legal sufficiency claim, we find that appellant's actions in grabbing MS's face, and forcing her mouth open in order to insert his penis into her mouth, while MS was both under the influence of alcohol and simultaneously being sexually assaulted by SPC Rodriguez in a small shed, amounted to "force" as defined by 10 U.S.C. § 920(g)(5)(B) (2012). Specifically, appellant's actions amounted to "the use of . . . physical strength or violence . . . sufficient to overcome [or] restrain" MS in order to effectuate the sexual act of putting appellant's penis into MS's mouth. Moreover, the offense of rape by force was complete upon "penetration, however slight" of MS's mouth by appellant's penis. 10 U.S.C. § 920(g)(1)(A) (2012).

Regarding factual sufficiency, for the reasons explained in the Background section *supra*, and based on the totality of the record, we are convinced, beyond a reasonable doubt, of appellant's guilt.

## B.  Sentence Appropriateness

At SPC Rodriguez' separate court-martial, held approximately one week after appellant's at Fort Riley, a panel found SPC Rodriguez guilty of two specifications of sexual assault by bodily harm, and one specification of adultery in violation of Articles 120(b)(1)(B) and 134, 10 U.S.C. §§ 920(b)(1)(B) and 934 (2012), UCMJ. The panel sentenced SPC Rodriguez to a dishonorable discharge, ten months of confinement, and reduction to E-1. Appellant contends that his 66-month confinement sentence was impermissibly harsh in comparison to SPC Rodriguez' sentence. We disagree, and affirm appellant's sentence.

This court reviews sentence appropriateness de novo. *United States v. Bauerbach*, 55 M.J. 501, 504 (Army Ct. Crim. App. 2001) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Art. 66(c), UCMJ; 10 U.S.C. § 866(c). "When we conduct a sentence appropriateness review, we review many factors to include: the sentence severity; the entire record of trial; appellant's character and military service; and the nature,

seriousness, facts, and circumstances of the criminal course of conduct." *United States v. Martinez*, 76 M.J. 837, 841-42 (Army Ct. Crim. App. 2017).

One of the "many aspects of sentence appropriateness" is so-called "sentence comparison." *Id.* at 840 (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.A.A.F. 1982)). We consider sentence comparison in the overall rubric of sentence appropriateness only in "those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Martinez*, 76 M.J. at 840 (internal quotation marks and citations omitted). An appellant seeking sentence comparison relief must show that his sentence is "highly disparate" from a "closely related" defendant's sentence. *Id.* If a defendant is able to show both, the burden shifts to the government to provide a rational basis for the disparity. *Id.* However, an appellant with an otherwise appropriate sentence is not necessarily entitled to a "windfall" just because a coactor received a more lenient sentence. *Id.* at 841-42.

Contrary to the government's claims, appellant's and SPC Rodriguez' cases were clearly "closely related." Appellant and SPC Rodriguez simultaneously assaulted MS, and were for a time co-accused's on the same charge sheet. The fact that appellant was convicted of rape and SPC Rodriguez was convicted of sexual assault is not a meaningful distinction for these purposes. *See, e.g., United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) ("coactors involved in a common crime" are closely related). While appellant's and SPC Rodriguez' sentences to 66 months and 10 months of confinement are disparate, they are not *highly* disparate when compared to their respective maximum punishments of life (appellant) and 61 years (SPC Rodriguez). *See Martinez*, 76 M.J. at 841 ("Whether a sentence is highly disparate is determined by comparison of the adjudged sentences taking into account the disparity in relation to the potential maximum punishment.") (citing, *inter alia, Lacy*, 50 M.J. at 289). Here, both appellant's and SPC Rodriguez' sentences represented very small percentages of their respective potential maximum sentences.

Ultimately, however, even assuming *arguendo* that appellant could show both that his case was closely related to SPC Rodriguez', and that their sentences were highly disparate, and the government could offer no countervailing rationale for the disparity, appellant would nonetheless be entitled to no relief. Appellant's sentence to 66 months confinement was not an unduly harsh sentence for this forcible rape.[4] The fact that a panel chose later to hand down a misdemeanor-level sentence for sexual assault in SPC Rodriguez' court-martial, for offenses that carried a maximum penalty of 61 years, does not transform appellant's otherwise reasonable sentence

---

[4] Indeed, while not dispositive, it is noteworthy that appellant's trial defense counsel argued at sentencing that "a sentence of five years would be the most appropriate punishment in this case."

into an unreasonable one. Stated differently, appellant is not entitled to a windfall just because his coactor received one. *See Martinez*, 76 M.J. at 842 ("appellant is not entitled to a windfall from an otherwise appropriate sentence just because a coactor, who may even be more culpable, received a more lenient sentence").

*C. Speedy Trial*

Appellant asks that we dismiss his rape conviction based on a speedy trial violation.[5] Finding no such violation, we decline to do so.

First, appellant contends that his arraignment took place 257 days after preferral of charges, in violation of the requirement that he be "brought to trial" within 120 days. Rule for Courts-Martial [R.C.M.] 707(a); *United States v. Wilder*, 75 M.J. 135, 138 (C.A.A.F. 2016). Appellant's 257-day calculation is wrong because it fails to account for the government's valid withdrawal and dismissal of the original charges after the original preferral, well before 120 days. Following repreferral, appellant was arraigned on Day 81.[6]

---

[5] Appellant simultaneously identified the speedy trial issue as both a *Grostefon* issue and as an enumerated assignment of error in the body of his brief. *See United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We note that the Army Court of Criminal Appeals Internal Rules of Practice and Procedure [A.C.C.A.R.] 15.5 provides that counsel should raise *Grostefon* issues "by footnote or in an Appendix to [appellant's] Brief." Whether considered as a *Grostefon* matter or as an enumerated assignment of error, we find appellant's speedy trial claim to be without merit.

[6] While appellant's brief makes no mention of it, the parties litigated this same speedy-trial issue at some length pretrial, and the military judge made detailed findings of fact and conclusions of law. The first set of charges were preferred in this case on 22 January 2016. On that original charge sheet, appellant and SPC Rodriguez were charged jointly. The convening authority subsequently withdrew and dismissed the joint charges on 3 May 2016, a date that the military judge calculated, and appellant agreed, was effectively day 72 of the R.C.M. speedy-trial clock due to certain excluded time. The military judge further found that the convening authority had properly withdrawn and dismissed appellant's charges after the government reconsidered its joint-trial strategy. Upon repreferral, the government separately charged appellant and SPC Rodriguez, and the two proceeded to separate trials. We agree with the military judge that the convening authority's rationale for the withdrawal and dismissal was valid and not a subterfuge, and therefore the 3 May 2016 withdrawal and dismissal reset the speedy-trial clock. *See* R.C.M. 707(b)(3)(A)(i); *United States v. Hendrix*, 77 M.J. 454, 456-57 (C.A.A.F. 2018).

(continued . . .)

Second, appellant contends that, because he was "flagged" pursuant to applicable Army regulations throughout the pendency of the 257 days, the speedy trial clock did not reset, even assuming a valid purpose for the government's withdrawal and repreferral. [7] In support of this contention, appellant cites to our sister court's decision in *United States v. Robinson*, 47 M.J. 506 (N.M. Ct. Crim. App. 1997).

*Robinson* is inapposite. In *Robinson*, the Navy-Marine Corps Court of Criminal Appeals found a dismissal action taken on the 120th day (115th chargeable day) to be a "subterfuge, done *solely to avoid the 120-day clock*." 47 M.J. at 510 (emphasis added). We find no such subterfuge here, where the withdrawal and dismissal were not only for a proper purpose, but also occurred well in advance of the 120-day mark. While *Robinson* does discuss the Navy's "legal hold" concept, which appellant would have us analogize to the Army's "flag," the *Robinson* court did not base its holding on the fact that the appellant there was on a "legal hold," but rather, because the Court found that the dismissal action itself was a subterfuge. *Id.* at 510-11. Moreover, appellant cites to no case from this Court or our superior Court for the proposition that a proper flagging action pursuant to Army regulation has any effect on the R.C.M. 707 speedy-trial clock. Thus, appellant's *Robinson* speedy-trial argument fails.

**CONCLUSION**

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

(. . . continued)
The government repreferred charges against appellant on 18 July 2016. Charges were referred and delivered to the military judge on 7 October 2016 and appellant was arraigned on 7 November 2016. Because the speedy-trial clock effectively stops upon the military judge's receipt of the charges unless otherwise specified, appellant's arraignment following repreferral took place on day 81. *See United States v. Hawkin*s, 75 M.J. 640, 641-42 (Army Ct. Crim. App. 2016).

[7] Army Reg. 600-8-2, Personnel-General: Suspension of Favorable Personnel Actions (Flag), para. 2-2 (11 May 2016).