**UNITED STATES, Appellant,**

v.

**Jeryll S. EILAND, 277 72 6399 Aviation Boatswain's Mate (Fuels) Third Class (E–4) U.S. Navy, Appellee.**

**NMCM No. 9301250.**

U.S. Navy–Marine Corps Court of Military Review.

13 Oct. 1993.

LT David K. Herlihy, JAGC, USNR, Appellate Government Counsel.

LT Alan D. Titus, JAGC, USNR, Appellate Defense Counsel.

CDR Timothy D. Young, JAGC, USN, Appellate Defense Counsel.

ORR, Senior Judge:

This general court-martial is before us on an appeal by the Government pursuant to Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862, from an order entered by the military judge at trial abating the proceedings due to the unavailability of two witnesses requested by the accused/appellee. A military judge's order abating a court-martial proceeding is the functional equivalent of a ruling that terminates the proceedings and is a proper subject for a Government appeal under Article 62. *United States v. True*, 28 M.J. 1, 2 (C.M.A.1989).

I.

The appellee was arraigned on charges of raping a woman in Palma de Mallorca, Spain, on 18 June 1992 and communicating a threat to the same woman during the course of the alleged rape, in violation, respectively, of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934. The woman, a United States citizen, was working in a local bar in what she described as a "public relations" capacity for the summer. These offenses are purported to have occurred during a struggle between the alleged victim and the appellee in a stall in the men's room of that bar.

Spanish authorities initially exercised jurisdiction over the alleged rape, but after reviewing the documentary evidence and hearing the witnesses, the Spanish magistrate decided "to dismiss further action on ...·

[the] case because it lacked factual merit. . . ." Nevertheless, the case remained in a suspended status and could be reopened. Stipulation of Testimony, Appellate Exhibit III. The officer exercising general court-martial jurisdiction in Spain for the U.S. Navy also reviewed the evidence and declined to order an Article 32 investigation. Enclosure 9 of Appellate Exhibit VII.

The officer exercising general court-martial jurisdiction over the command to which the appellee was attached at the time of these alleged offenses subsequently regained jurisdiction over the appellee, convened an Article 32 investigation, and referred the appellee to trial in Jacksonville, Florida. That earlier proceeding was terminated, however, when the military judge found that convening authority to be an accuser. Attachment 25, Appellate Exhibit VII, at 18. The proceeding now before us was convened in Jacksonville by a third officer exercising general court-martial jurisdiction over the appellee.

The witnesses in issue are (1) the medical doctor who examined the alleged victim the morning after the rape was alleged to have occurred and (2) a public relations employee (who is also referred to as a nurse) at the Spanish hospital where that examination was conducted who acted as a translator because the alleged victim only spoke English. From the information in the record before us, it appears that both witnesses are citizens and residents of Spain and that, as a consequence of their respective occupations, both individuals have had previous experience in dealing with alleged rape victims. The doctor found no physical evidence of trauma consistent with rape, and his description of the alleged victim's behavior and responses to his queries raise questions about her credibility. The public relations employee described behavior by the alleged victim that was not, in her view, typical of rape victims and opined that the alleged victim had not been raped.

The military judge found that this potential testimony was clearly favorable to the appellee and that it was highly probative on the issue of the purported victim's credibility, which he characterized as "perhaps the key

issue in the case." Record at 82. He also stated that this testimony

> is not of a nature that would readily adapt itself to written testimony, to stipulations of fact or things of that nature. If I were the fact-finder, I would have grave difficulty in deciding what weight, if any, to give to the testimony of . . . [these] two witnesses without actually seeing them testify and making some judgments about them and their credibility in the course of that observation.

*Id.*

Government efforts to obtain the presence of these witnesses for trial in Florida have been unsuccessful. Before the judge made the foregoing determination, the two witnesses had refused U.S. Government funded travel to the situs of the trial, and the Government had proposed using various documentary versions of their testimony as substitutes. The first alternative proposed was to send all necessary personnel to Palma to take a videotaped deposition of each witness, and the military judge initially granted the Government a continuance to pursue that alternative rather than abating the proceedings.[1] Later, the Government returned to court with a message from the Naval Legal Service Office Detachment in Spain (Appellate Exhibit XXII) indicating that repeated efforts to contact either of the two witnesses had been unfruitful and all inquiries had been referred to their lawyer. Repeated telephone calls to that lawyer had gone unanswered.

The Government then proposed that the sworn statements of both witnesses be considered an adequate substitute for their live testimony, but the military judge declined to so hold. Record at 91–92. The Government then expressed a willingness "to stipulate as fact the things that these witnesses would assert." Record at 92. This was articulated variously as "the demeanor, the behavior, of the victim at the hospital shortly after the alleged rape," as "what it was they saw," and as "[i]f they say that this woman was happy and giddy at the hospital, we will stipulate

---

1. The military judge declined to make an advisory ruling whether either deposition would actually be an adequate substitute until he had the opportunity to see and hear each deposition.

that it's a fact that she was happy and giddy at the hospital." Record at 93. The military judge declined, however, to accept a stipulation without the consent of the appellee, and the appellee refused to consent to any stipulation. Record at 94. Consequently, the military judge abated the proceedings until the two witnesses are produced or some other adequate substitute for their testimony is proposed. Record at 94–95.

## II.

Article 46 of the UCMJ provides that both counsel and the court "shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President shall prescribe." 10 U.S.C. § 846. The regulations prescribed by the President are embodied in Rule for Courts–Martial (R.C.M.) 703, which addresses the production of witnesses and provides that "[e]ach party is entitled to the production of any witness whose testimony on a matter in issue on the merits ... would be relevant and necessary." R.C.M. 703(b)(1). That entitlement does not apply, however, if the witness requested is unavailable within the meaning of Military Rule of Evidence 804(a), which states that a witness is unavailable where the witness' ("declarant's") attendance cannot be procured by process or other reasonable means. Mil.R.Evid. 804(a)(5). Although this appears to preclude any right to the production of a witness who is outside the jurisdiction of the court, R.C.M. 703 also provides:

if the testimony of a witness who is unavailable is of such central importance to

an issue that it is essential to a fair trial, and if there is no adequate substitute for such testimony, the military judge shall grant a continuance or other relief in order to attempt to secure the witness' presence or shall abate the proceedings, unless the unavailability of the witness is the fault or could have been prevented by the requesting party.

R.C.M. 703(b)(3).[2] This aspect of the rule establishes additional requirements before abatement should be considered appropriate when a requested witness cannot be produced: Not only must the witness' testimony be "relevant and necessary," it must also be found to be "of such central importance to an issue that it is essential to a fair trial" and there must be no adequate substitute. The burden of meeting these additional requirements is on the accused who requests the witness or witnesses. *United States v. Davis*, 29 M.J. 357, 359–60 (C.M.A.1990).

Although the military judge in this case did not repeat the precise language of the Rule, his use of the proper criterion is clear from his statement: "[I]t is the conclusion of the Court that it simply would not be a fair trial to require the accused to go to trial under circumstances where the only evidence or the only witnesses favorable to him would be forced to testify by way of deposition, statement, what-have-you...." Record at 82. As we have already indicated in our summary of the proceedings leading to this appeal, this statement was subsequently tempered by the judge's decision to grant the Government a continuance to explore possible substitutes.[3] Although the Court of Mili-

---

2. There is no issue in this case concerning any defense contribution to the unavailability of these two witnesses, and the Government has not suggested such.

3. The Government's pleading is replete with references to the lack of an adequate substitute for the testimony of the two witnesses at issue (other than the suggested stipulation) and to their unavailability and unwillingness to cooperate further in the prosecution of this case. In support of these references, the Government relies (1) upon the position that even if this court-martial was held in Spain, the court would still not have subpoena power over foreign nationals residing in Spain and (2) upon the representation that repeated telephone calls to the two requested

witnesses to determine if they were willing to participate in a deposition were unsuccessful. Appellate Exhibit XXII. In this context and although not significant to the resolution of the issues before us, we note the following concerning the present posture of this case.

Nowhere does the Government refer to or request this Court to take judicial notice of the applicable status of forces agreements that might bear on the obligation of Spanish authorities to cooperate in the investigation and prosecution of offenses committed by U.S. servicemembers in Spain by U.S. military authorities. Whatever obligation may actually exist, the stipulation of testimony from the Spanish magistrate who initially considered this case under Spanish law included the following statement:

tary Appeals stated in *Davis* that the burden is on the defense to show that any substitute is inadequate, no potential substitute other than the sworn, ex parte statements of the two witnesses existed in this case until the Government offered to stipulate to "the facts which the defense sought to establish."[4]

█ Questions concerning a military judge's determinations on the unavailability of witnesses are reviewable for abuse of discretion. *United States v. Cokeley,* 22 M.J. 225, 229 (C.M.A.1986); *United States v. Jones,* 20 M.J. 919, 930 (N.M.C.M.R.1985); *see also United States v. Brown,* 28 M.J. 644 (A.C.M.R.1989). In reviewing Government appeals, however, we "may only act with respect to matters of law...." Article 62(b) UCMJ, 10 U.S.C. § 862(b). We are bound by the military judge's factual determinations unless they are unsupported by the evidence of record or are clearly erroneous. *United States v. Burris,* 21 M.J. 140, 144 (C.M.A. 1985); *United States v. Bolado,* 34 M.J. 732,

735 (N.M.C.M.R.1991), *aff'd,* 36 M.J. 2 (C.M.A.) (summary disposition), *cert. denied,* —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992). Under either standard, we conclude that the military judge in this case did not abuse his discretion and the factual determinations he made are not clearly erroneous and are supported by the evidence of record. We also conclude as a matter of law that his decision not to accept the Government's offer to stipulate as an adequate substitute was not erroneous.

█ The Government contends (1) that the mere offer to enter into a factual stipulation constitutes the existence of an "adequate substitute" within the meaning of R.C.M. 703(b)(3), whether or not the defense is willing to enter into such a stipulation, and (2) that the military judge abused his discretion when he found that the offer to stipulate was not an adequate substitute. Consequently, under the Government's theory (1) the mili-

Currently, I am permitting United States Navy officials to investigate this case in Spain and speak to any relevant witnesses. I can order any of the Spanish witnesses to cooperate and make themselves available for your investigation, however, until I receive a formal request from the United States Navy requesting that assistance, I will not go that far.

Stipulation of Testimony, Appellate Exhibit III. There is nothing in the record of trial to indicate that the Government has ever attempted to enlist the assistance of the magistrate, as suggested in this statement, in taking the videotaped depositions initially suggested by the Government as possible substitutes for the actual presence of this witnesses. We also note the trial counsel in this case orally articulated on at least one occasion on the record that the Government was willing to hold this trial in Spain if it would facilitate the actual presence of these witnesses at trial, but this alternative was not pursued because of the perceived reluctance of the two witnesses to cooperate.

In this context the Government argues that the military judge erred in abating the proceedings when he relied, at least partially, on his finding that the Government had contributed to the unavailability of these witnesses by bringing the appellee to the United States from Spain for trial. In the Government's view, holding the trial in the United States complicated only the logistics of obtaining witnesses located in Spain but had no impact on the ability to compel attendance because the United States has no subpoena power over foreign nationals living in foreign countries. Government Brief at 9. While the military judge did state that the Government "was

the moving party in separating the situs of the trial from the site where these witnesses would be relatively readily available," Record at 82, it does not appear that the military judge relied upon that determination in any way in deciding to continue or abate the proceedings except insofar as it was relevant in determining that *the appellee,* as the party requesting the witnesses, was not at fault or could not have prevented the unavailability of the witnesses—a determination that the judge was required to make under R.C.M. 703(b)(3).

4. We note that the actual contents of the Government's "offered stipulation" have never been reduced to writing. Consequently, we are actually addressing an offer to stipulate vice an offered stipulation. As we stated above, the actual scope of this offer to stipulate was never clearly defined by the trial counsel, and during oral argument before this Court, appellate Government counsel articulated a stipulation that did not include what appears to be the respective opinions of the two witnesses concerning the alleged victim's behavior in comparison to other rape victims in their professional experience. While the issue of the admissibility of such opinions under Military Rules of Evidence 701, 702 and 703 is not presently before us, we mention this aspect of the case because it reflects on the posture of the case because it reflects on the ability of the parties to control or manipulate the information available to the trier of fact when the source of the evidence is a stipulation vice the testimony of a witness present in the courtroom. The drawbacks inherent in the use of stipulations is discussed further in footnote 5, below.

tary judge should not have abated the proceedings under R.C.M. 703(b)(3) even though he had determined both that the witnesses' testimony was essential to a fair trial and that the witnesses were unavailable, and (2) the appellee should either have to agree to the stipulation or forego the use of that evidence.

As a general rule, a stipulation may not be accepted into evidence unless the military judge is satisfied that the parties consent to its admission. R.C.M. 811(c); *see also United States v. Thornton*, 8 U.S.C.M.A. 446, 24 C.M.R. 256 (1957) ("An accused cannot be forced to present the testimony of a material witness on his behalf by way of stipulation or deposition."). That restriction, however, is not absolute. *See United States v. Sweeney*, 14 U.S.C.M.A. 599, 34 C.M.R. 379 (1964). An accused may be in a situation where a stipulation may be the only method available to get a potential witness' testimony before the court. *United States v. Scott*, 5 M.J. 431 (C.M.A.1978); *United States v. Tangpuz*, 5 M.J. 426 (C.M.A.1978); *United States v. Allen*, 31 M.J. 572, 610–20 (N.M.C.M.R.1990); *Jones*, 20 M.J. at 930–31; *United States v. Cover*, 16 M.J. 800 (N.M.C.M.R.1983). These cases suggest a stipulation[5] as a possible alternative to live testimony of a material witness when the military judge has properly determined that the witness is unavailable and the testimony is cumulative. *United States v. Bennett*, 12 M.J. 463 (C.M.A.1982); *Allen*, 31 M.J. at 612.

The Government's argument in this case, however, is essentially that the appellee should be forced to stipulate or forego putting the evidence before the court when the military judge has determined the witnesses are unavailable and their testimony is *not* cumulative. Of course the judge not only found that their testimony was not cumulative of other evidence, he also determined that their live testimony was essential to a

fair trial. Consequently, if we adopt the Government's position in this case, it appears to us that the second sentence in R.C.M. 703(b)(3) becomes superfluous. We do not think the President intended to promulgate a meaningless rule.

Subsection (3) of Rule 703(b) is based, in part, on *United States v. Daniels*, 23 U.S.C.M.A. 94, 48 C.M.R. 655 (1974). *Analysis*, R.C.M. 703, App. 21, MCM, 1984, A21–32. In *Daniels*, the accused was convicted of attempted carnal knowledge of an underage, U.S. military-dependent female in Belgium, where the court-martial was held. Daniels requested the victim be called as a defense witness, but despite reasonable efforts the Government was unable to compel the attendance of the victim through the exercise of either U.S. process or that of the Belgian Government. 48 C.M.R. at 656–57. The Court of Military Appeals held that Daniels' right to a fair trial was "gravely impaired" when the military judge allowed the trial to continue and stated: "In the absence of specific statutory or regulatory authority to compel ... [the victim's] testimony as a defense witness, and so long as her voluntary presence could not be secured, we believe the military judge had no constitutional alternative except to abate the proceedings." *Id.* at 657.

It is apparent from the decision in *Daniels*, as well as the language of the rule, itself, that R.C.M. 703(b)(3) contemplates the possible abatement of proceedings in a situation very similar to the one now before us. When the military judge has determined that the presence of an unavailable witness is essential to a fair trial and has also found that no other adequate substitute is available, an accused cannot be forced to chose between accepting the Government's offer to stipulate or foregoing the use of the evidence that would be produced through the live testimony of the witness.

---

5. A stipulation, whether of fact or testimony, seems to be among the least acceptable of the possible substitutes for live testimony. Unlike a deposition or former testimony, there is no opportunity for cross-examination or even complete questioning. The substance of a stipulation is often the result of negotiation rather than the actual words of the potential witness and, as a

result, often becomes a compromise derived from the strengths or weaknesses in the bargaining positions of the parties. That negotiation process often takes place with neither party knowing much about the background and experience of the witness or what the witness might actually say in response to a particular question.

The cases addressing issues concerning the availability of witnesses and alternatives to live testimony consistently mention the discretion of the military judge in resolving these matters at the trial level. Although the Court of Military Appeals has identified several relevant factors to aid the military judge in making decisions in this area, *Tangpuz*, 5 M.J. at 429, the Court also stated that it "has never fashioned an inelastic rule to determine whether an accused is entitled to the personal attendance of a witness.... Rather, the matter must be left to the sound discretion of the person ruling on the request for the personal attendance of a witness...." *Id.* That Court has also stated:

[W]e seek to elucidate whether anything short of actual presence of a witness is adequate where testimony is material.... Although live testimony of such a witness normally is imperative to the fairness of the process, occasionally some alternate form of testimony will pass muster under the facts and circumstances of a given case.

But upon whom does the responsibility fall for determination of such an occasion and the mode of production this testimony will take? This power is clearly within the discretion of the trial judge after a showing of a witness' materiality. Upon proper motion he must determine if the actual presence of witness is required or whether justice may be guaranteed by some judicially accepted alternate form of testimony. In exercising this discretion, the judge must be scrupulous in assuring that the effect of the form of the testimony under the particular facts and circumstances of the case will not diminish the fairness of the proceedings.

*Scott*, 5 M.J. at 432.

### III.

Under the circumstances of this case, we conclude that the military judge did not abuse his discretion in deciding to abate the proceedings in this case and his determinations that the live testimony of the two witnesses requested by the appellee was essential to a fair trial and that there was no adequate substitute for that testimony are supported by the evidence of record and were not clearly erroneous. The Government's appeal is denied.

Chief Judge LARSON and Senior Judge WELCH concur.