*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Matthew C. HARRINGTON, Staff Sergeant
United States Air Force, Appellant

**No. 21-0025**

Crim. App. No. 2020-02

Argued February 10, 2021—Decided May 6, 2021

Military Judges: Christopher M. Schumann (arraignment) and Bryan D. Watson (trial)

For Appellant: *Captain Alexander A. Navarro* (argued); *Mark C. Bruegger*, Esq.

For Appellee: *Major Dayle P. Percle* (argued); *Colonel Shaun S. Speranza, Lieutenant Colonel Matthew J. Neil,* and *Mary Ellen Payne,* Esq.

Amicus Curiae for Appellee: *Colonel Jennifer Clay, Lieutenant Colonel Erika Sleger, and Captain Ashley Torkelson* (on brief) (on behalf of Special Victims Counsel).

Chief Judge STUCKY delivered the opinion of the Court, in which Judges OHLSON, SPARKS, and HARDY, joined. Judge MAGGS filed a separate dissenting opinion.

————————

Chief Judge STUCKY delivered the opinion of the Court.

Appellant, charged with and originally convicted of one specification of sexual assault against Staff Sergeant (SSgt) FC, moved to dismiss the specification upon rehearing on the ground that the Government violated his right to a speedy trial under the Sixth Amendment. The military judge granted the motion and dismissed the case with prejudice, after which the Government appealed to the United States Air Force Court of Criminal Appeals (CCA), under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2012). The CCA reversed and Appellant appeals. We hold that the military judge did not err in granting Appellant's motion to dismiss and reverse.

**I. Background**

Appellant and SSgt FC were fellow servicemembers who were stationed together at Creech Air Force Base (AFB), Nevada, but who had no romantic or sexual relationship. *United States v. Harrington*, Misc. Dkt. No. 2020-02, 2020 CCA LEXIS 292, at *2, 2020 WL 5051616, at *1 (A.F. Ct. Crim. App. Aug. 26, 2020). On January 30, 2016, they both attended a party with coworkers at an off-base residence. *Id.* at *2–3, 2020 WL 5051616, at *1. SSgt FC became very intoxicated during the party and was helped to a bedroom to sleep. *Id.* at *3, 2020 WL 5051616, at *2. As her testimony at Appellant's first court-martial explained, "when she awoke sometime later, her pants were lowered to around her thighs, and [Appellant] was lying behind her with his penis inside her and his hand on her hip." *Id.* at *3–4, 2020 WL 5051616, at *2. At first, she did not move, and Appellant went on to "thrust[] a few times" and "kiss[] her on the shoulder." *Id.* at *4, 2020 WL 5051616, at *2. When she did move, Appellant "withdrew and moved away from her on the bed." Appellant then stopped moving, after which SSgt FC got up, dressed, and left the room. *Id.* at *4, 2020 WL 5051616, at *2.

Appellant was charged with one specification of sexual assault against SSgt FC. *Id.* at *4, 2020 WL 5051616, at *2. At the first court-martial, the defense moved to introduce particular evidence under Military Rule of Evidence (M.R.E.) 412. *Id.* at *4, 2020 WL 5051616, at *2. The military judge held a session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), (2012) regarding the issue. *Id.* at *4–5, 2020 WL 5051616, at *2. During the session, the defense explained its proposed M.R.E. 412 evidence—testimony from witnesses who also attended the party, LB and TSgt KW, that, shortly before the alleged assault, they all played a drinking game together, during which SSgt FC allowed Appellant to take shots of alcohol from her mouth, breasts, and buttocks. *Id.* at *5, 2020 WL 5051616, at *2. The military judge denied the motion because the testimony was not admissible under M.R.E. 412(b)(1)(B) or 412(b)(1)(C). *Id.* at *5, 2020 WL 5051616, at *2. The defense requested reconsideration on the matter multiple times during the court-martial, but the military judge upheld his ruling. However, he did allow evidence about the

drinking game and alcohol consumption at the party generally. *Id.* at *5, 2020 WL 5051616, at *2.

Ultimately, the panel of officer and enlisted members that sat as a general court-martial convicted Appellant, contrary to his pleas, of that one specification of sexual assault against SSgt FC, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012). *United States v. Harrington*, No. ACM 39223, 2018 CCA LEXIS 456, at *1, 2018 WL 4621100, at *1 (A.F. Ct. Crim. App. Sept. 25, 2018). The panel sentenced Appellant to a dishonorable discharge, hard labor without confinement for three months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved only so much of the sentence as included the dishonorable discharge, forfeiture of $1,066.00 pay per month until completion of appellate review, reduction to E-1, and reprimand. *Id.* at *1–2, 2018 WL 4621100, at *1.

On appeal, the CCA decided that the military judge abused his discretion by excluding the M.R.E. 412 evidence because it found that "[t]he materiality of the evidence to the Defense's case coupled with the availability of limiting instructions to guide the court members' deliberations required the admission of the evidence in this case." *Id.* at *20, 2018 WL 4621100, at *6. As a result, the court set aside the findings and sentence and authorized a rehearing. *Id.* at *20–22, 2018 WL 4621100, at *6–7. Although the Government moved for reconsideration, which the CCA denied, it did not seek review before this Court. Rather, it elected to pursue a rehearing. *Harrington*, 2020 CCA LEXIS 292, at *6, 2020 WL 5051616, at *2.

The time line leading up to a rehearing then proceeded as follows:

- February 4, 2019: The record was returned to the Nellis AFB legal office.

- February 22, 2019: The Government became aware that SSgt FC would participate in a rehearing.

- April 23, 2019: Appellant returned from appellate leave, reported to the base, and was represented by an area defense counsel (ADC).

- May 13, 2019: The convening authority referred the specification to a general court-martial for rehearing, and the trial date was set for August 19, 2019.

- May 30, 2019: Appellant submitted a request for individual military defense counsel (IMDC) for his defense counsel from the first trial.

- June 7, 2019: Appellant was arraigned.

- June 12, 2019: Appellant made both a written demand for speedy trial and a request for discovery.

- July 24, 2019: Appellant's request for IMDC was denied.

- July 31, 2019: A circuit defense counsel (CDC) was detailed to represent Appellant along with the ADC.

- August 5, 2019: The defense moved for a continuance to give the CDC time to prepare. The military judge granted the motion and set the trial date for October 15, 2019.

- September 27, 2019: The Government moved to declare LB unavailable for the rehearing, after LB failed to reply to a June 2019 email from a paralegal asking him to call about the rehearing. The defense opposed the motion and the military judge denied it, based on a lack of evidence as to LB's unavailability.

- October 11, 2019: The Government told the defense that it could not find LB or get him to the rehearing. The defense moved both for a continuance and for the Government to be compelled to produce LB.

- October 13, 2019: The military judge granted the defense's request for a continuance, due to the Government's failure to locate LB, and moved the trial date to March 9, 2020.

- October 15, 2019: The military judge held a motions hearing.

*Id.* at *6–8, 2020 WL 5051616, at *2–3.

The CCA summarized the ensuing events:

4

The motions hearing continued into 16 October 2019, when the Defense moved to dismiss the Charge and Specification for violation of [Appellant's] right to speedy trial under both R.C.M. 707 and the Sixth Amendment. The military judge denied the motion to dismiss in a written ruling dated 28 October 2019. With respect to the Sixth Amendment, the military judge applied the four factors from *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972). First, he found the length of the delay was facially unreasonable under the circumstances and warranted a full *Barker* analysis; in particular, he found very little progress was made in bringing [Appellant] to trial between 4 February 2019 and the arraignment on 7 June 2019. The military judge noted that because this was a rehearing, the investigation was already complete, no Article 32, UCMJ, 10 U.S.C. § 832, hearing was required, and the Charge and Specification were the same as previously litigated. Second, he found the reasons for the delay were "nearly all … primarily attributable to the Government's processing of this case, or … derived immediately therefrom." He particularly noted the record disclosed little explanation for the delay between 4 February 2019 and referral on 13 May 2019, and again noted that because this was a rehearing, the investigation was already complete and no Article 32, UCMJ, hearing was required. Third, the military judge found the June 2019 demand for speedy trial tipped that factor in the Defense's favor, but "only very slightly." Finally, and at this point decisively, the military judge found no demonstrated prejudice to [Appellant] at that time. In particular, he found that because the Defense's requested witnesses had not been produced or provided testimony, he could not assess whether the Defense's case at trial had been impaired. Accordingly, he denied the motion to dismiss at that point, but enjoined the parties to be "vigilant for evidence of prejudice to the Accused as this case progresses toward trial."

The court-martial reconvened on 9 March 2020. The Defense orally moved for reconsideration of its motion to dismiss for violation of [Appellant's] right to a speedy trial, specifically under the Sixth Amendment. The military judge conducted a hearing at which LB and TSgt KW testified. LB testified, *inter alia*, that even after reviewing his prior motion testimony from the original trial, he could no longer

remember some details of the night of the party, and of the Jenga [drinking] game in particular. Although he now remembered [Appellant] taking a body shot from SSgt FC's belly (and vice versa), he could not remember [Appellant] taking shots from SSgt FC's breasts or buttocks. LB also acknowledged he had "dodged" the Government's efforts to contact him prior to October 2019. TSgt KW testified that in June 2017 she began to experience symptoms of epilepsy, and in June 2019 she was formally diagnosed with that disorder. She testified this condition had dramatically impaired her short-term and long-term memory. As of March 2020, TSgt KW barely recalled the night of the party and remembered nothing of the Jenga game.

On 10 March 2020, the military judge granted the defense motion to dismiss with prejudice. He again assessed the *Barker* factors, reaching similar findings and conclusions with respect to the length of the delay, reasons for the delay, and demand for speedy trial as he had in his 28 October 2019 ruling. He added that the reason the trial had been continued until 9 March 2020 was that until that point the Government's efforts to secure the presence of LB had been "wholly inadequate." As to the fourth Barker factor, prejudice, the military judge now found [Appellant's] ability to defend himself at trial had been impaired due to the lost memories of LB and TSgt KW. He included in his findings of fact the conclusion "that if the United States had proceeded expeditiously with bringing this case to a rehearing, it is likely that at least some of the exculpatory evidence which [the Court of Criminal Appeals] directed to be admitted at this hearing (and which the Defense seeks to introduce) would have been available."

*Id.* at *9–12, 2020 WL 5051616, at *3–4.

The Government moved for reconsideration on two primary bases. *Id.* at *12–13, 2020 WL 5051616, at *4. First, it presented emails dated from February 4, 2019, to May 28, 2019, in order to show the administrative steps that it took during that time to prepare for the rehearing. Second, it called SSgt SC, another attendee of the party, to testify about his recollections of the event. *Id.* at *13, 2020 WL 5051616, at *4. The military judge adopted his factual findings from his

March 10, 2020, ruling and accepted the Government's additional evidence. *Id.* at *13–14, 2020 WL 5051616, at *5. However, as to the administrative steps, the military judge decided the Government "provided insufficient information that would, in any way, excuse the amount of time that the United States took in order to bring [Appellant] properly before this rehearing." *Id.* at *14, 2020 WL 5051616, at *5. In particular, the military judge noted that:

> [t]he obvious delay in getting the case referred to trial, about 100 days, from receipt of the requisite materials until the actual referral, plus the amount of time that passed as a result of the continuance necessitated by the inadequacy of the Government's action to locate [LB], totals approximately 246 days.

*Id.* at *14–15, 2020 WL 5051616, at *5.

Then, the military judge found that SSGT SC's testimony would not constitute an adequate substitute for that of LB or TSgt KW, given that SSgt SC struggled with his answers while testifying and had lost some of his memories from that night, including whether Appellant actually took body shots from particular parts of SSgt FC's body. *Id.* at *13–14, 2020 WL 5051616, at *4–5. The military judge concluded that the Government had "fallen short in its obligations in bringing this case to a rehearing, and the Defense ha[d] been directly and substantially prejudiced as a result," as well as that:

> [i]f the [Government] had proceeded expeditiously and effectively with bringing this case to a rehearing, it is likely that at least some of the exculpatory evidence which [the CCA] specifically directed to be admitted at this rehearing, and which the Defense seeks to introduce, would have been available for [Appellant's] use.

*Id.* at *16–17, 2020 WL 5051616, at *5.

Consequently, the military judge denied the Government's motion for reconsideration. *Id.* at *13–14, 2020 WL 5051616, at *5.

In its second review of the case, the CCA considered the granted issue. *Id.* at *17–36, 2020 WL 5051616, at *5–12. The lower court assumed that the first *Barker* factor weighed in Appellant's favor, and it agreed with the military judge that the second and third factors weighed in Appellant's favor. *Id.*

at *25–26, 2020 WL 5051616, at *8–9. However, the court diverged from the military judge in its analysis of the fourth *Barker* factor, prejudice. *Id.* at *26–35, 2020 WL 5051616, at *9–12. It reasoned that Appellant was not prejudiced by the delay of the rehearing because he had "failed to demonstrate" that (1) "TSgt KW and LB lost their memories during the period of facially unreasonable delay" or that (2) "the lost memories of TSgt KW and LB have actually prejudiced his defense at trial, in light of the availability of their prior testimony and other testimony that remains available." *Id.* at *36, 2020 WL 5051616, at *12. Additionally, the CCA stated that that lack of prejudice "outweigh[ed] the remaining [*Barker*] factors that, taken together, only moderately favor [Appellant]." *Id.* at *36, 2020 WL 5051616, at *12. Therefore, the court concluded that the military judge erred by granting Appellant's motion to dismiss, reversed the military judge's ruling, and returned the case to the Judge Advocate General for further proceedings. *Id.* at *36–37, 2020 WL 5051616, at *12.

## II. Law and Discussion

### A. Standard of Review

" 'In an Article 62, UCMJ, appeal, this court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial,' which in this case is Appellant." *United States v. Lewis*, 78 M.J. 447, 452 (C.A.A.F. 2019) (quoting *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017)). "We review the decision of whether an accused has received a speedy trial de novo as a legal question, giving substantial deference to a military judge's findings of fact that will be reversed only if they are clearly erroneous." *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations omitted). A finding of fact is clearly erroneous when "there is no evidence to support the finding" or when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018) (internal quotation marks omitted) (citation omitted).

### B. Speedy Trial

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial …." U.S. Const. amend VI.

In military prosecutions, the accused's Sixth Amendment speedy trial protections are generally triggered when charges are preferred. *United States v. Danylo*, 73 M.J. 183, 186 (C.A.A.F. 2014) (citing *United States v. Vogan*, 35 M.J. 32, 33 (C.M.A. 1992)).[1] We determine whether an appellant has been denied his right to a speedy trial using the four-factor test that the Supreme Court established in *Barker v. Wingo*, 407 U.S. 514 (1972). *See United States v. Wilder*, 75 M.J. 135, 138 (C.A.A.F. 2016). The four factors are: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Danylo*, 73 M.J. at 186 (quoting *Mizgala*, 61 M.J. at 129 (citing *Barker*, 407 U.S. at 530)). There are " 'three similar interests' " that we consider in the prejudice analysis: " '(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and [his] defenses in case of reversal and retrial, might be impaired.' " *Id.* at 188 (quoting *United States v. Moreno*, 63 M.J. 129, 138–39 (C.A.A.F. 2006)). Appellant claims only the third, regarding which we have said: "The most serious factor in analyzing the prejudice factor is evaluating the ability of an appellant to assert … his or her defense in the event of a retrial or resentencing." *Moreno*, 63 M.J. at 148 (citations omitted). This form of prejudice is the most serious because it " 'skews the fairness of the entire system.' " *Id.* at 147 (quoting *Barker*, 407 U.S. at 532).

## *C. Analysis*

Unlike the CCA, we conclude that the military judge did not err when he granted Appellant's motion to dismiss due to a speedy trial violation. The military judge made findings of

---

[1] The parties and the CCA seem to agree that Appellant's speedy trial claim was triggered on February 4, 2019, the date the record was returned to Nellis AFB for rehearing. *See Harrington*, 2020 CCA LEXIS 292, at \*21–22, 2020 WL 5051616, at \*8. We therefore use this date in evaluating Appellant's speedy trial claim. *But cf. United States v. Becker*, 53 M.J. 229, 231, 233 (C.A.A.F. 2000) (noting that sentence rehearing occurred 337 days after court decision authorizing rehearing and that this delay satisfied the first *Barker* factor).

fact that were supported by evidence and not clearly errone-
ous, and those facts sustain a conclusion that Appellant's
right to a speedy trial was violated under the *Barker* test. We
consider the *Barker* factors seriatim.

**(1) Length of Delay**

First, and as the CCA noted, there were lengthy delays in
retrying Appellant, which were particularly unreasonable
when the retrial was to consist of the rehearing of a single
specification and the sole victim chose to participate again.
*Harrington*, 2020 CCA LEXIS 292, at *9, *11, *21–25, 2020
WL 5051616, at *3–4, *7–8. Furthermore, at oral argument,
the Government agreed that the relevant time period to eval-
uate Appellant's speedy trial claim was February 4, 2019, to
March 10, 2020. A delay of more than 400 days is facially un-
reasonable. *See*, *e.g.*, *Doggett v. United States*, 505 U.S. 647,
652 n.1 (1992) ("Depending on the nature of the charges, the
lower courts have generally found postaccusation delay 'pre-
sumptively prejudicial' at least as it approaches one year.").
This factor weighs heavily in Appellant's favor.

**(2) Reasons for Delay**

Second, we agree with both the military judge and the
CCA that the Government was the primary cause of the de-
lay. It is true that Appellant asked for a continuance, which
the military judge granted, in order for the CDC to get up to
speed. However, the remaining delays—including an addi-
tional motion from the defense that requested both a contin-
uance and for the Government to be compelled to produce
LB—appear to stem from the Government's processing of the
case, particularly in terms of its meager and, as the military
judge found, "wholly inadequate," attempts to procure the tes-
timony of witnesses. *Harrington*, 2020 CCA LEXIS 292, at
*11, *24, 2020 WL 5051616, at *4, *8. This factor also weighs
in Appellant's favor.

**(3) Demand for Speedy Trial**

Third, and as noted in the time line above, Appellant did
make a demand for a speedy trial on June 12, 2019. *Id.* at *7,
*26, 2020 WL 5051616, at *3, *9. We concur with the military
judge and the CCA that this factor favors Appellant.

**(4) Prejudice**

Fourth, and most importantly, we cannot agree with the CCA that the military judge erred in determining that Appellant was prejudiced by the delay in his case. The lower court determined that there was no prejudice because there was insufficient evidence that TSgt KW and LB lost their memories during the delay or that their memory loss negatively affected Appellant's defense when substitute testimony was available. However, the military judge thoroughly considered these matters, through hearings and analysis on the record, and did not err by concluding to the contrary.

As to the first point, the military judge made factual findings that the Government's efforts to procure the witnesses and hold the rehearing were lacking, the witnesses had become unable to provide adequate testimony, and this important testimony probably could have been preserved (at least in part)[2] if the Government had not caused the delay. Given the record in this case and our review of the evidence in a light most favorable to Appellant, there is "evidence to support th[ose] finding[s]" and we are not "left with the definite and firm conviction that a mistake has been committed." *Criswell*, 78 M.J. at 141 (internal quotation marks omitted) (citation omitted).

Regarding the second point, the military judge decided that the proffered substitute testimony could not suffice.[3] The

---

[2] We do note that TSgt KW began experiencing epilepsy symptoms in June 2017. Thus, even if the Government had proceeded more efficiently, her memory of the events still might have been impacted. However, while her symptoms began in June 2017, she was not diagnosed with epilepsy until June 2019, and it was not until March 2020 that she said she could not remember the night of the party or the drinking game. Accordingly, the military judge's finding that " 'if the United States had proceeded expeditiously with bringing this case to a rehearing, it is *likely* that *at least some* of [TSgt KW's testimony] would have been available' " is not clearly erroneous. 2020 CCA LEXIS 292, at *11–12, 2020 WL 5051616, at *4 (emphasis added). Moreover, there is no evidence contradicting the military judge's finding that LB lost his memories during that time. *Id.* at *11–12, 2020 WL 5051616, at *4.

[3] It is true that the Government also offered to stipulate to relevant facts. Government's Answer to Supplement at 25, 30, 34, *United States v. Harrington,* No. 21-0025 (C.A.A.F. Nov. 30, 2020);

Government offered two forms of substitute testimony: live testimony from SSgt SC and prior testimony from TSgt KW and LB (via an audio recording or transcript). *Harrington*, 2020 CCA LEXIS 292, at \*12–14, 2020 WL 5051616, at \*4–5; Government's Answer to Supplement at 23.

As noted above, the Government presented the proposed live testimony from SSgt SC before the military judge during the hearing on the Government's motion for reconsideration, and the military judge determined that the testimony would be inadequate because he observed that SSgt SC also had lost many memories about the events in question. "Such a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *United States v. Hennis*, 79 M.J. 370, 384 (C.A.A.F. 2020) (internal quotation marks omitted) (citation omitted).

In terms of TSgt KW and LB's prior testimony, the military judge did not err by deciding that the Appellant's case would be negatively affected if it had to "rely nearly-exclusively upon" presenting the prior testimony through a recording or transcript, "while simultaneously … the Government [was] free to attempt to prove its own case with live witnesses." *Harrington*, 2020 CCA LEXIS 292, at \*12, 2020 WL 5051616, at \*4 (internal quotation marks omitted). Our predecessor Court noted that " 'former testimony often is only a weaker substitute for live testimony,' " *United States v.*

---

*Harrington*, 2020 CCA LEXIS 292, at \*13, 2020 WL 5051616, at \*4; Appellate Exhibit (App. Ex.) CXXIX, at 4 ¶ 17. However, when the defense declined such a stipulation, the military judge said he would "not force the Accused to so stipulate." App. Ex. CXXIX, at 4 ¶ 17; *see also Harrington*, 2020 CCA LEXIS 292, at \*14, 2020 WL 5051616, at \*5. Military case law supports the military judge's position. *See, e.g.*, *United States v. Thornton*, 8 C.M.A. 446, 449, 24 C.M.R. 256, 259 (1957) ("An accused cannot be forced to present the testimony of a material witness on his behalf by way of stipulation or deposition."); *United States v. Eiland*, 39 M.J. 566, 570 (N.M.C.M.R. 1993) ("When the military judge has determined that the presence of an unavailable witness is essential to a fair trial and has also found that no other adequate substitute is available, an accused cannot be forced to [choose] between accepting the Government's offer to stipulate or foregoing the use of the evidence that would be produced through the live testimony of the witness.").

*Vanderwier*, 25 M.J. 263, 265–66 (C.M.A. 1987) (citation omitted), and that there is a "preference for live testimony." *United States v. Cokeley*, 22 M.J. 225, 229 (C.M.A. 1986). This Court has reiterated that preference for live testimony. *United States v. Cabrera-Frattini*, 65 M.J. 241, 245 (C.A.A.F. 2007). While we upheld the military judge's ruling to allow substitute prior testimony for an unavailable witness in that case, we did so because we found no abuse of discretion when the military judge's decision was based on the Government's "good faith efforts to procure the witness's presence for trial." *Id.* at 248. The military judge in this case ruled differently given the vastly divergent circumstances, and we similarly decide that doing so was not error.

Due to the inability of TSgt KW or LB to testify and the lack of adequate substitute testimony, Appellant is left without the M.R.E. 412 testimony that, as the CCA itself originally decided, was erroneously excluded from Appellant's initial court-martial. Without the M.R.E. 412 testimony, Appellant has a diminished "ability … to assert … [his] defense [during the] retrial," meaning that he has experienced the "most serious [form of prejudice]," the kind that "skews the fairness of the entire system." *Moreno*, 63 M.J. at 147–48 (internal quotation marks omitted) (citation omitted). Consequently, there is prejudice here, and this factor favors Appellant.

**Conclusion**

Therefore, as all four *Barker* factors favor Appellant, the CCA was not "correct in its examination of the military judge's ruling," *United States v. Feltham*, 58 M.J. 470, 475 (C.A.A.F. 2003), and we hold that the military judge did not err by granting Appellant's motion to dismiss.

### III. Judgment

The judgment of the United States Air Force Court of Criminal Appeals is reversed. The charge and specification are dismissed with prejudice.

Judge MAGGS, dissenting.

The United States Air Force Court of Criminal Appeals (AFCCA) held that the military judge abused his discretion in granting Appellant's speedy trial motion because the record does not support a crucial finding of fact by the military judge concerning the issue of prejudice. *United States v. Harrington*, No. ACM 2020-02, 2020 CCA LEXIS 292, at \*30–31, 2020 WL 5051616, at \*10 (A.F. Ct. Crim. App. Aug. 26, 2020) (unpublished). I agree with the AFCCA on this point. Even viewed in the light most favorable to Appellant, the record contains no evidence that the Government's unexcused delay of 246 days prejudiced Appellant. As I show below, Appellant's sole argument to the contrary rests on a material mischaracterization of the record. I therefore would affirm the AFCCA's judgment reversing the military judge's ruling. I respectfully dissent from the Court's contrary ruling.

## I. Relevant Background

Appellant allegedly committed misconduct at a party in January 2016. He was tried for this alleged misconduct in October and November 2016 and found guilty of sexual assault. But in a successful appeal to the AFCCA, Appellant won a right to a rehearing on the findings and sentence in 2018. The convening authority referred charges for the rehearing in May 2019. Various delays then ensued. In October 2019, Appellant asked the military judge to dismiss the charges on the ground that the Government had deprived him of his right to a speedy trial. The military judge denied the motion at that time, reasoning that there was not yet enough information available to establish prejudice.

But in March 2020, when the rehearing still had not begun, the military trial judge revisited the issue and concluded that the Government had violated Appellant's right to a speedy trial under the Sixth Amendment. The military judge determined that 246 days of unjustified delay were attributable to the Government. This calculation implies that if the Government had not caused the unjustified delay, the "rehearing would have convened around 7 July 2019," approximately two and a half years after the testimony at the previous trial. *Harrington*, 2020 CCA LEXIS 292, at \*29, 2020 WL

5051616, at *9. The military judge also determined that Appellant had shown prejudice because witnesses who likely would have provided exculpatory evidence—if the Government had not caused so much delay—could no longer remember the incident. The military judge specifically found:

> [I]f the United States had proceeded expeditiously with bringing this case to a rehearing, it is likely that at least some of the exculpatory evidence which the AFCCA directed to be admitted at this hearing (and which the Defense still seeks to introduce) would have been available for the Accused's use at this rehearing.[1]

The military judge reaffirmed this finding of fact about causation with greater certitude in his ruling on the Government's motion for reconsideration, identifying three specific witnesses who had lost relevant memories of the incident:

> The inability of the Defense to now utilize the detailed testimony of TSgt [KW], SSgt [SC], and Mr. [LB]—which was readily available in 2016—*is a direct result of* the Government's lack of diligence in this case and its failure to bring this case to a rehearing in an expeditious and effective fashion.

(Emphasis added.) The military judge accordingly dismissed the charges against Appellant.

---

[1] The AFCCA doubted that this statement by the military judge was a "finding of fact" because the military judge used the qualifying phrase "it is likely." *Harrington*, 2020 CCA LEXIS 292, at *28–29, 2020 WL 5051616, at *9. I think that the military judge's statement is a finding of fact reflecting the military judge's correct understanding of the burden of proof. "[T]he burden of proof on any factual issue the resolution of which is necessary to decide a motion shall be by a preponderance of the evidence." Rule for Courts-Martial 905(c)(1). In my view, the phrase "it is likely" is just another way of saying "it is more probable than not." *See Black's Law Dictionary* 1113, 1454 (11th ed. 2019) (entries for "likely" and "probable"). This is simply the definition of proof by a preponderance of the evidence. *See Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) ("The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." (internal quotation marks omitted)).

On appeal, the AFCCA reversed. *Harrington*, 2020 CCA LEXIS 292, at \*36–37, 2020 WL 5051616, at \*12. The AFCCA concluded that the military judge had abused his discretion in determining that the Government's unjustified delay from July 2019 until March 2020 caused any memory loss. *Id*. at \*29–30, 2020 WL 5051616, at \*9–10. With respect to one of the witnesses specified by the military judge, Technical Sergeant KW, the AFCCA concluded "that any finding of fact that at some point between 7 July 2019 and 9 March 2020, and not earlier, it is 'likely' [she] lost the [relevant memories] . . . is speculative and unsupported by the record." *Id*. at \*29, 2020 WL 5051616, at \*9. With respect to a second witness specified by the military judge, Mr. LB, the AFCCA reasoned:

> The record provides no basis to conclude it is "likely" [his] memories were lost during the eight months between July 2019 and March 2020. Rather, it is equally if not more likely these memories were lost during the more than 31 months that elapsed between the first trial in November 2016 and July 2019 . . . .

*Id*. at \*30, 2020 WL 5051616, at \*10. The AFCCA did not expressly address the issue of whether the record contained any evidence that the third witness specified by the military judge, Staff Sergeant SC, had lost memories between July 2019 and March 2020, but concluded generally that "[t]he record does not support a finding of 'fact' that memories were 'likely' lost as a result of the Government's facially unreasonable delay." *Id*., 2020 WL 5051616, at \*10. Because Appellant could not show prejudice, the AFCCA concluded that Appellant could not prevail on his speedy trial claim. *Id*. at \*36, 2020 WL 5051616, at \*12. The AFCCA therefore reversed the military judge's ruling and remanded the case for trial. *Id*. at \*36–37, 2020 WL 5051616, at \*12.

## II. Applicable Legal Standards

An accused must "show[] sufficient prejudice for a Sixth Amendment violation." *United States v. Danylo*, 73 M.J. 183, 189 (C.A.A.F. 2014). Prejudice resulting from witness unavailability must be "ow[ed] to the delay." *Barker v. Wingo*, 407 U.S. 514, 534 (1972). Accordingly, when the accused asserts prejudice because witnesses' memories have faded, "the issue actually is whether any impaired memory . . . was *caused by*

*the government's delay.*" *United States v. Joyner*, 494 F.2d 501, 506 (5th Cir. 1974) (emphasis added). In assessing this issue, "to the extent that valid reasons cause[d] delay, the delay does not count against the [Government] *at all.*" *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002) (emphasis added). The relevant interval for assessing *prejudice* is therefore not the complete period between the date that the speedy trial clock started and the actual date of the trial. Instead, the relevant interval is the period between the date by which the trial should have begun absent unexcused delay and the actual date of the trial.[2] *See United States v. Gregory*, 322 F.3d 1157, 1163 (9th Cir. 2003) (holding that "[t]he prejudice with which we are concerned is prejudice caused by the delay that triggered the *Barker* inquiry, not simply any prejudice that may have occurred before the trial date but unrelated to the fact of the delay itself"); *United States v. Holyfield*, 802 F.2d 846, 848–49 (6th Cir. 1986) (assessing possible prejudice resulting from a five-month period of "unexcusable delay" rather than the entire fifteen-month period between indictment and trial); *United States v. Guerrero*, 756 F.2d 1342, 1350 (9th Cir. 1984) (rejecting a speedy trial claim despite a significant delay because the appellant had "not sufficiently shown any causal relationship between the delay and the unavailability of two witnesses" without whose testimony he alleged he was prejudiced).

A finding of causation is a finding of fact. *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995). Accordingly, the military judge's finding of fact that the Government's delay caused witnesses to lose their memories is essential to the finding of prejudice in this case. This Court must accept that finding of fact unless it is clearly erroneous. *Danylo*, 73 M.J. at 186. "A finding of fact is clearly erroneous when there is no evidence [in the record] to support the finding." *United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018).

---

[2] The Court blurs this distinction when it observes that "the relevant time period to evaluate Appellant's speedy trial claim was February 4, 2019, to March 10, 2020," without noting that a portion of the delay was excused. *United States v. Harrington*, __ M.J. __, __ (10) (C.A.A.F. 2021).

### III. Appellant's Argument on Appeal

On appeal to this Court, Appellant does not contest these legal standards. He agrees that to establish a Sixth Amendment speedy trial violation, he had to show prejudice.[3] *See Danylo*, 73 M.J. at 186 (citing *Barker*, 407 U.S. at 530). He agrees that for there to be sufficient prejudice, there must be a causal link between the Government's *unexcused delay* and the memory loss. He agrees that the military judge's ruling should be reviewed for an abuse of discretion. And he further agrees that the military judge would have abused his discretion if his finding that the Government's delay caused memory loss was clearly erroneous because it had no support in the record.

But Appellant contends that the military judge's finding of fact was not clearly erroneous because evidence in the record showed that one of the witnesses, Technical Sergeant KW, lost some of her memory during the period of the Government's delay. In the key passage addressing prejudice in his filing to this Court, Appellant asserts:

> *The Military Judge received evidence during the motion hearing in March 2020 that TSgt KW remembered more information in October 2019—when the rehearing was originally scheduled—than she did in March 2020. R. at 281.* Nonetheless, the Government was still not prepared for trial in October 2019 (when TSgt KW remembered more) because its trial counsel "could not find" [another witness]. . . . Furthermore, the Government apparently did not interview TSgt KW until March 8, 2020, as this is the first time the Government provided notice to the Defense about TSgt KW's memory issues. . . . Therefore, the Military Judge's finding—that had the Government moved more expeditiously in bringing the case to a rehearing, at least some exculpatory evidence would still be available—was not clearly erroneous.

---

[3] Appellant contends that he suffered actual prejudice, and does not ask this Court to find presumptive prejudice. *See United States v. Doggett*, 505 U.S. 647, 655–56 (1992) (addressing factors that might lead a court to find presumptive prejudice even in the absence of proof of actual prejudice).

Supplement to Petition for Grant of Review at 22–23, *United States v. Harrington,* No. 21-0025 (C.A.A.F. Nov. 16, 2020) (emphasis added).

The record, however, does not support Appellant's assertions. The sole page of the record that Appellant cites, page 281, contains no testimony at all. Instead, this page records a portion of trial defense counsel's *argument* on the speedy trial motion in March 2020. Trial defense counsel asserted during argument that "Sergeant [KW] did testify that she—her memory was better, and she remembered more than she does now." The military judge asked for clarification, asking: "You mean October of 2019?" And trial defense counsel answered affirmatively.

But trial defense counsel was mistaken in making this argument. Technical Sergeant KW testified at a hearing on the speedy trial motion in March 2020. Her testimony appears in the record at pages 220–36. In her testimony, Technical Sergeant KW states that her memory of the incident was fresher when she testified at the first trial in 2016. *But Technical Sergeant KW never says anything about her memory being better in October 2019 than it was at the time of the hearing in March 2020.* When asked for clarification about this point at oral argument, counsel for Appellant conceded that Technical Sergeant KW testified only that her memory had worsened since 2016 and did not specifically testify that it had worsened since October 2019 (as trial defense counsel had incorrectly argued). And a review of the totality of Technical Sergeant KW's testimony reveals that she *at no point testified that any of the relevant memories were lost during the Government's delay between July 2019 and March 2020*, as opposed to the greater length of time between 2016 and July 2019. Accordingly, the AFCCA correctly concluded that the record does not support the military judge's finding of fact. The record simply contains no evidence whatever that any witness lost memory between July 2019—when the trial would have taken place in the absence of any unreasonable delay—and March 2020. I therefore agree with the AFCCA that the military judge's finding was clearly erroneous. *See Criswell,* 78 M.J. at 141.

The Court today reaches a different conclusion. In so doing, the Court does not rely on Appellant's argument in his filing to this Court or his mischaracterization of the record.

Instead, the Court decides that the record supports the military judge's findings of fact for two reasons not advanced by Appellant in his filing. First, the Court observes that "while TSgt KW['s] [epilepsy] symptoms began in June 2017, she was not diagnosed with epilepsy until June 2019, and it was not until March 2020 that she said she could not remember the night of the party or the drinking game." *Harrington*, __ M.J. at __ (11 n.2). This statement is true, but it is not evidence that Technical Sergeant KW lost memory between July 2019 and March 2020. As far as the record shows, Technical Sergeant KW first testified that she lost memory in March 2020 simply because she was not asked to testify about her loss of memory at an earlier time. In addition, her diagnosis in June 2019 was *before* July 2019, the time at which a trial would have taken place if there had been no unreasonable delay. And her symptoms causing memory loss began *two years before* her formal diagnosis. There is simply no testimony to support the proposition that Technical Sergeant KW lost relevant memories between July 2019 and March 2020 "because of the [Government's] delay" *rather than* in the *two years* before, after the onset of symptoms. *Joyner*, 494 F.2d at 506. Accordingly, the AFCCA was correct in concluding that it is wholly "speculative" to suppose that the memory loss occurred at any particular time. *Harrington*, 2020 CCA LEXIS 292, at *29, 2020 WL 5051616, at *9.

Second, the Court also observes that "there is no evidence contradicting the military judge's finding that [witness] LB lost his memories during that time." *Harrington*, __ M.J. at __ (11 n.2). This statement also appears to be true, but a lack of evidence *contradicting* a finding is not the same as there being "evidence to *support* it." *Criswell*, 78 M.J. at 141 (emphasis added) (internal quotation marks omitted) (citation omitted). Neither Appellant nor the Court has identified any evidence in the record that *supports* the proposition that LB lost relevant memories after July 2019.

## IV. Conclusion

In sum, the AFCCA decided this case correctly. The military judge's finding of fact regarding a loss of memory *during the period of unjustified delay* was clearly erroneous because the finding lacked any support in the record. The sole page of the record that Appellant cites in support of the military

judge's finding of fact is inapposite.[4] No witnesses testified as to *when* they lost their memories. Because the military judge's finding of fact was essential to finding prejudice, the military judge abused his discretion in granting Appellant's speedy trial motion. I therefore would affirm the AFCCA's judgment reversing the military judge's ruling.

---

[4] All counsel before this Court must take care to ensure that their factual representations are supported by the record. In this case, the representation that the military judge "received evidence . . . that TSgt KW remembered more information in October 2019" is false. This mischaracterization of the record is particularly concerning because the presence of this kind of direct, testimonial evidence in the record supporting the military judge's finding of causation would have unambiguously settled the issue of causation in Appellant's favor given that such a finding is reviewed for clear error.